SULT, Appellant, *v.* SCANDRETT et al., Respondents.

No. 8696

Submitted January 16, 1947. Decided March 6, 1947.

168 Pac. (2d) 405

572

Mr. Ralph J. Anderson and Mr. Albert C. Angstman, both of Helena, for appellant.

Messrs. Murphy, Garlington & Paul and Mr. Walter L. Pope, all of Missoula, for respondent.

THE HON. C. F. HOLT District Judge (sitting in place of Mr. Chief Justice Adair, disqualified) delivered the opinion of the Court.

This is an action for damages alleged to have resulted from the negligence of the defendants. The defendants' general demurrer to the complaint was sustained. Plaintiff declined to amend or plead further and judgment was entered dismissing his complaint, from which he appeals.

Plaintiff by his complaint alleges that the defendants are duly appointed and qualified trustees in bankruptcy of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a corporation, engaged in the business of transporting persons and property for hire over its lines, etc., said line extending across the state of Montana; that defendants maintained at Melstone, Montana, a stockyard and scales for the use of shippers of livestock; that the plaintiff was a livestock grower in the vicinity of Melstone, Montana, and that on or about the 9th day of September, 1944, he entered into a contract to sell to the Yellowstone Livestock Company of Sidney, Montana, approximately 358 head of mixed cattle to be delivered at Melstone and there to be weighed on defendants' scales, the purchase price to be paid and the cattle to be shipped to various destinations over defendants' lines; that the plaintiff's agent on or about the 11th of September, 1944, notified the defendants' freight agent at Miles City, Montana, by letter that these and other cattle would be weighed on defendants' scales and shipped on defendants' railroad on or about the 18th of September and requested that the scales be placed in a good state of repair; that the defendants' freight agent on or about the 18th day of September informed the plaintiff's agent that the scales were in good condition; that the plaintiff drove his cattle to Melstone,

arriving there about the 19th of September, and found after they commenced weighing the cattle that the scales were in a poor state of repair; that by reason of the condition of the scales the purchaser declined to accept the cattle and refused to pay for them; that consequently the palintiff was forced to ship the cattle over the defendants' railroad to Sioux City, Iowa, and there sell them at a much lower price than the aforesaid purchaser had agreed to pay, whereby plaintiff suffered damage in the amount of six thousand dollars.

The questions involved are whether the defendants, after having voluntarily installed and maintained the scales for the use of shippers and prospective shippers as alleged were duty bound to maintain them in good working condition unless and until notice given to shippers of a change in the service; and whether the alleged negligent false statement by defendants' freight agent, that the scales were in good condition, renders defendants liable for loss sustained by the plaintiff in reliance upon the statement.

It is plaintiff's contention that the complaint states a cause of action under either or both of two theories: First, under the rule as stated in Stewart v. Standard Publishing Co., 102 Mont. 43, 50, 55 Pac. (2d) 694. Citing 45 C. J. 650, the general rule is that, "* * * where a person undertakes to do an act or discharge a duty by which the conduct of another may be properly regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of negligent failure so to perform it." 38 Am. Jur. 657, gives the rule as, "Stated broadly, one who undertakes to do an act or discharge a duty by which conduct of others may be properly regulated and governed is under a duty to shape his conduct in such a manner that those rightfully led to act on the faith of his performance shall not suffer loss or injury through his negligence."

Plaintiff contends that defendants could have discontinued

██ this service, but this they failed to do. Defendants were advised of plaintiff's desire to use the scales and were requested to have them in good working order, and had the defendants at that time informed plaintiff that they were discontinuing the service, then a different case would be presented. But here it is alleged the agent for defendants assured plaintiff that the scales were in good order and no effort was made thereafter to inform plaintiff otherwise. Consequently, at the time this statement was made by defendants' agent, they undertook to continue the performance of this weighing service for plaintiff. It was then too late to discontinue the service, at least without giving plaintiff reasonable advance notice of their intention to do so.

Cummings v. Henninger, 28 Ariz. 207, 236 Pac. 701, 41 A. L. R. 207, holds that one cannot abandon the duty to maintain a sidewalk in front of his property which he voluntarily assumed and performed for a series of years by merely permitting the walk to become out of repair, but that to avoid liability for its condition he must perform some affirmative act designed to give general notice of his intention to do so.

The reasoning of the Arizona Supreme Court appears to be logical. Consequently, even without the statement by defendants' agent, that the scales were in good working order, the service of weighing stock that they might be shipped over defendants' railroad could not be abandoned without notifying plaintiff. For the better reason, when such a statement was made by defendants' agent, the service could not be discontinued without reasonable notice to him. For the above indicated reasons this case is distinguishable from H. R. Moch Co. v. Rensselaer Water Co., 247 N. Y. 160, 159 N. E. 896, 62 A. L. R. 1199, and Cavanagh v. Hoboken Land & Improvement Co., 93 N. J. L. 163, 107 A. 414, 5 A. L. R. 933, relied upon by defendants.

Defendants' contention is that the rule of the Stewart case, supra, is applicable only where the service undertaken to be

performed is imminently dangerous to person or property. We do not agree with this contention.

Inherent danger to person or property is required only in cases coming within the rule of the case of MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, wherein a stranger to a contract is seeking to recover for injuries received because of the negligence of a manufacturer, vendor, contractor, etc., in constructing or placing upon the market an imminently dangerous article, or article dangerous when negligently constructed.

Plaintiff contends that the complaint is also sufficient upon the theory that defendants are liable for injury or loss, if any, sustained by plaintiff because of relying upon a false statement negligently made by defendants while owing a duty to speak truthfully.

Defendants contend that the complaint is insufficient in this respect because it does not specifically allege that the statement in question was negligently made.

It is a well recognized rule, however, that it is not necessary to use the term "negligence" if the conclusion of negligence can be drawn from the facts stated. This rule is stated in White v. Covell, 66 Cal. App. 732, 227 Pac. 196, 198: "In stating a cause of action based upon negligence, the general rule is that it is not necessary for the pleader to use the term 'negligence,' if the conclusion of negligence can be drawn from the facts stated." See Willoburn Ranch Co. v. Yegen, 49 Mont. 101, 140 Pac. 231. In Marcellus v. Wright, 51 Mont. 559, 562, 154 Pac. 714, 716, the rule is thus stated: "Whatever is necessarily implied in, or is reasonably to be inferred from, an allegation, is to be taken as directly averred."

The complaint alleges that Mr. Winship, defendants' freight agent, informed Mr. Brindley and Mr. Neiter, plaintiff's agents and co-shippers, that the scales were in good condition; that when the owners commenced weighing the cattle it was found that the scales did not weigh correctly by reason of the defendants having allowed the pit to become filled with mud

and water. Consequently, it is apparent that the allegations of the complaint are sufficient to support plaintiff's second theory.

Defendants contend that they were under no duty arising out of public calling or contract, to speak correctly. Admittedly before a person may be held liable for a negligent false statement he must have owed a duty to the other, arising from public calling, contract, or otherwise, to speak correctly. But such a duty here existed. Mr. Winship was informed by plaintiff not only that the cattle were to be weighed on the defendants' scales, but also that they would be shipped over their railroad. Plaintiff, in other words, was about to enter into a contract with defendants for the shipment of his cattle over their road. International Products Co. v. Erie Railroad Co., 244 N. Y. 331, 155 N. E. 662, 664, 56 A. L. R. 1377, is relied upon by plaintiff, in which case the defendants were about to become the bailee of plaintiff's goods to be stored. When the goods arrived they were placed in a different warehouse from the one in which plaintiff, prior to his delivery of same to defendant, had been advised to store them and in which he had insured the goods. Thereafter the goods were destroyed by fire. The defendant was held liable to plaintiff for the value of his goods, the court saying: ''An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered, or is about to enter, into a contract concerning the goods which are, or are to be, its subject, is another. * * * Here, as we view the facts, the duty to speak with care, if it spoke at all, rested on the defendant. We have it about to become the bailee of the plaintiff's goods; the inquiry made by him with whom it was dealing for the purpose as it knew of obtaining insurance; the realization that the information it gave was to be relied upon, and that, if false, the insurance obtained would be worthless. We have an inquiry such as might be expected in the usual course of business made of one who alone knew the truth. We have a negligent answer, untrue in fact, actual reliance upon it, and resulting proximate loss.

True, the answer was not given to serve the purposes of the defendant itself. This we regard as immaterial.''

It is true no contractual relationship existed between plaintiff and defendants at the time the negligent false statement was made. But defendants were about to become the carrier of plaintiff's cattle and were so informed when their statement as to the condition of the scales was made. Consequently, there was a duty in the defendants to give the correct information. This they failed to do and plaintiff relied upon the false information to his loss. A duty to speak with care rested upon defendants, growing out of the prospective contractual relation between the parties.

Defendants argue finally that irrespective of their other contentions, no cause of action exists since the loss sustained by plaintiff was not the proximate result of their negligence, and also suggest that plaintiff is seeking the wrong relief; that instead of suing for damages for the loss of his contract, he should be suing for the loss due to shrinkage in weight of the cattle because of having to return them to the home range or because of having to move the cattle to another loading place where scales would be available.

Donovan v. McDevitt, 36 Mont. 61, 63, 92 Pac. 49, 50, holds: ''A general demurrer raises the questions: Does the complaint state facts sufficient to constitute a cause of action? In other words, under the facts stated, is the plaintiff entitled to the relief demanded, or any relief? And, if so, the complaint is proof against a general demurrer. In 16 Encyclopedia of Pleading and Practice, 793, the rule is stated as follows: 'Under Code procedure generally, the function of a demurrer in respect to pleadings is to determine the sufficiency of the facts alleged therein to constitute a cause of action or a defense, and not to determine whether or not facts are stated which are sufficient to entitle the pleader to the relief demanded. In other words, to sustain the demurrer it must appear that, upon the facts pleaded, no relief can be had.' ''

See also Chancellor v. Hines Motor Supply Co., 104 Mont.

603, 611, 69 Pac. (2d) 764, holding that definitions of proximate cause are inadequate to cover all types of cases and that whether negilgent acts are the proximate cause of the injury is a question for the jury to determine under proper instruction.

Under the facts pleaded here, plaintiff is entitled to some relief, and that is all that is necessary under a general demurrer. Defendants' contention on this point is without merit. The freight agent, when he made the false statement, and defendants, when they failed to maintain the scales in good working condition, could reasonably anticipate that plaintiff, known to be relying on the false statement and relying on the continuation of the weighing service, would be injured in some way. Certainly before plaintiff had rounded up his cattle from their range, driven them miles to defendants' railroad station, they owed the duty not to speak or act negligently, which duty they breached according to the allegations of the complaint. Plaintiff suffered a loss or damages in the natural sequence of events following their negligence. That negligence is alleged to be the proximate cause of his loss or damage.

If defendants had advised plaintiff before he rounded up his cattle and drove them to Melstone for weighing and shipping that the scales were in bad repair, and that they have acted discontinuing their scale service, then plaintiff could have acted accordingly, and without doubt would have made arrangements to either repair the scale or load over some other scale that was in good order, or would have made some other satisfactory arrangement to maintain his contract of sale. At any rate he would have had the opportunity to endeavor to protect the same.

The suggestion that the damages claimed were not reasonably foreseeable is not important in this state. The statute permits recovery of damages for breach of an obligation not arising from contract "whether it could have been anticipated or not." Sec. 8686, Rev. Codes of Montana 1935.

It is not necessary that the particular injury which resulted should have anticipated or foreseen; it is sufficient that

the wrongdoer ought to have anticipated that some injury or damage was likely to result as the reasonable and natural consequences of the wrongful act. Mize v. Rocky Mt. Bell Tel. Co., 38 Mont. 521, 532, 100 Pac. 971, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189; Stewart v. Stone & Webster Eng. Corp., 44 Mont. 160, 175, 119 Pac. 568; Heckaman v. Northern Pac. R. Co., 93 Mont. 363, 386, 20 Pac. (2d) 258. And whether some injury or damages ought to have anticipated because of the alleged wrongful statement presents a question for the jury if the facts alleged are sustained by proof. Compare Stewart v. Stone & Webster Eng. Corp., supra, and cases therein cited.

The judgment is reversed, and the cause remanded with directions to vacate the order sustaining defendants' demurrer to the complaint, to enter an order overruling it and to allow defendants a reasonable time within which to further plead.

Associate Justices Choate, Angstman, Metcalf concur.

Mr. Justice Cheadle (dissenting).

I think that the complaint fails to state a cause of action for negligence on the theory relied upon by the plaintiff, for two reasons. First, plaintiff entered into his contract for sale of his cattle prior to assurance by defendants' agent that the scales were in order, and, therefore, took his chance of being able to carry out that provision requiring the weighing on defendants' scale at Melstone. So far as this action is concerned, he is in no better position than he would have been had he been advised, upon inquiry, that the scale was unusable. In other words, in making his contract, he in no way depended upon advice that the scale was or would be usable. It is conceded that the defendants owed him no duty to either provide a scale or to maintain it. In making his contract plaintiff was in no way misled by defendants, to his injury. Suppose, for illustration, that the scale had been damaged by a sudden flood while plaintiff's cattle were being driven to Melstone. Certainly it would not be contended that defendants would be liable for such damages as now claimed. Could it then be said, as in the

majority opinion, that it would then be too late to discontinue the gratuitous service without notice? I think not.

Secondly, it is my view that the damages claimed are not such as might be the reasonably forseeable or probable result of the alleged negligence. It may be that, relying on defendants' representation, plaintiff would be entitled to reimbursement for loss for shrinkage of the cattle occasioned by being driven to Melstone and return to their range. But that is an entirely different matter than recovery for loss resulting from cancellation of his contract, of which defendants had no knowledge, and under which plaintiff's obligation was incurred prior to the representation alleged. The situation here presented falls within the rule as state in 45 C. J. 913: ''The proximate consequences of a negligent act must be within the range of probability as viewed by ordinary men, and consequences which are only possible cannot be regarded as either probable or natural.'' See 25 C. J. S., Damages, sec. 25, p. 488. It seems to me that the complaint fails to allege damages resulting from the violation of a duty of defendants, or from the wrongful act or omission of defendants. 38 Am. Jur. 672.

I cannot subscribe to the pronouncement of the majority that even without the statement by defendants' agent the service could not be abandoned without notifying the plaintiff. If such is the law of this state, it would seem to follow that no gratuitous or voluntary service, once established, may be discontinued without notice of such discontinuance served, in some manner, upon all persons who may have occasion to avail themselves of such service. If the service involved here was, in fact, gratuitous, as appears conceded, it would seem that, by statutory provision, it may be discontinued at any time. Sec. 7769, Rev. Codes, 1935.

I am aware of the provision of section 8686, Revised Codes, 1935, which, for the breach of an obligation not arising from contract, permits recovery of an amount which will compensate for all the detriment caused thereby, whether it could have been anticipated or not. But that section is not here applicable be-

cause the damages claimed did not follow the breach of any obligation, and were not proximately caused by any wrong or negligent act of the defendants.