**Sandra DEEDS, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 2567.**

United States District Court
D. Montana,
Havre-Glasgow Division.

Nov. 10, 1969.

Aronow & Anderson, Shelby, Mont., for plaintiff.

Otis L. Packwood, U. S. Atty., and Clifford E. Schleusner, Asst. U. S. Atty., Billings, Mont., for defendant.

## ORDER AND OPINION

JAMESON, District Judge.

Plaintiff seeks damages under the Federal Tort Claims Act [1] for injuries sustained on May 31, 1963, when an automobile owned and being driven by Gerald B. Tanberg, in which plaintiff was riding as a guest passenger, left the road

---

[1]. 28 U.S.C. 1346(b) and Chapter 171.

and rolled over on Montana secondary highway No. 232, generally known as "Wild Horse Road".

Tanberg was a 19 year old second class airman, stationed at the Havre Air Force Station, herein called the Havre Radar Base, located 39 miles north of Havre, Montana, on Wild Horse Road. Plaintiff, Sandra Deeds, was a 17 year old high school junior. On the night of May 30 and early morning of May 31, 1963, plaintiff, Tanberg, and Gerald R. Freeland, another 19 year old airman, were among those attending a party at the Non-Commissioned Officers Club at the Havre Radar Base.[2]

Staff Sergeant Raymond Brammier and other servicemen were employed at the club and served intoxicating liquor and beer to Tanberg and other minors during the course of the evening. It is conceded that Tanberg consumed alcoholic beverages at the party.[3]

The evidence discloses that on the afternoon of May 30, a Sergeant Wallace, who was stationed at the Radar Base, invited plaintiff to attend the party at the N.C.O. Club that night.[4] Plaintiff went to the party alone, after hitchhiking two rides from Havre to the Base. Later in the evening she met Freeland, whom she had dated for several months, and who had been at her home late the afternoon of May 30. Sometime between two and three A.M. on May 31 Freeland persuaded plaintiff that she should return to her home in Havre and asked Tanberg to give Sandra and him a ride to Havre.

The only transportation available to plaintiff for her return to Havre was by private automobile, no bus or other public transportation being available. Nor is there any evidence that any private vehicles were available except those owned and operated by Air Force personnel. Freeland's car had been left in town on the afternoon of May 30 and he had returned to the Radar Base with another airman.

Tanberg agreed to take Freeland and plaintiff to Havre in his car. Plaintiff and Freeland rode in the back seat. While traveling at a high rate of speed, the car left the road and rolled over, wrecking the car and injuring the three occupants.

Plaintiff contends that (1) the Air Force servicemen who dispensed liquor to minor servicemen and minor civilians at the club did so in violation of Section 4–413 R.C.M.1947[5] and Air Force Regulations[6] in that (a) Tanberg was a minor

2. Plaintiff estimated that there were about 30 girls at the party, most of them high school girls and under 21 years of age. She believed all of the men were Air Force personnel.

3. The extent of Tanberg's drinking is in dispute and will be discussed later herein.

4. Plaintiff testified that Wallace, an older man (she had been informed he was 45 years of age), Mike Gobel, an airman about 19 years of age, and Maurine Gummer, a 16 year old high school girl, came to her home with two sacks of beer, which were consumed during the course of the afternoon. Sandra was home alone. Her parents returned after Wallace, Gobel and Maurine had left. Sandra left home when her stepfather began to question her about beer bottles in the garbage can.

5. Section 4–413 R.C.M.1947 reads in pertinent part:

"No licensee or his or her employee or employees, nor any other person, shall sell, deliver, or give away or cause or permit to be sold, delivered or given away any liquor, beer or wine to:

'1. Any person under the age of twenty-one (21) years.

'2. Any intoxicated person or any person actually, apparently or obviously intoxicated. * * * '"

6. The Air Force Regulations read in pertinent part:

"(e) Installation commanders will issue instructions covering the dispensing, sale, possession, and use of alcoholic beverages. These instructions will include, but need not be limited to the following:

" * * *

"(2) Prohibition against the possession of and the dispensing or service of intoxicating beverages by or to persons under 21 years of age."

and (b) sales were made or liquor was given to him after he became intoxicated; (2) as a proximate result of the unlawful acts of the Air Force personnel Tanberg became intoxicated, drove his vehicle at an excessive rate of speed, and the plaintiff was injured as a consequence thereof; and (3) defendant accordingly is liable to plaintiff for damages as a result of the injuries sustained in the accident.

Defendant denies that it is liable for the injuries plaintiff sustained in the accident and contends (for the reasons hereinafter discussed) that plaintiff assumed the risk of Tanberg's conduct and negligence in the operation of the automobile, and that the accident was caused by the intervening negligence of Tanberg, while not in the course of any employment for defendant, "in serving to himself, and drinking, without the consent or permission of defendant's agents or employees" three glasses of whisky just before leaving the club and then getting into his automobile and driving at a high rate of speed toward Havre.

In its post-trial brief the defendant recognizes that under the Federal Tort Claims Act, "the United States has given its consent to be sued and to be liable for the torts of its employees in the same manner as would a private person, and in accordance with the law of the place where the tortious act or omission occurred".[7]

At the outset it may be noted that the parties agree that at the time of the accident Tanberg was driving his automobile at an excessive rate of speed, the defendant initially contending that this was ordinary negligence assumed by the plaintiff guest.[8] The court finds from the evidence that Tanberg was grossly negligent and reckless in his operation of the vehicle. The parties agree and the evidence supports a finding, that he was traveling at a speed of at least 80 to 90 miles an hour. The highway patrolman who investigated the accident testified that the curve where the accident occurred "could be negotiated safely by a reasonably good driver" at 55 miles an hour "under ideal conditions", and that above that speed it would be hazardous.[9]

The parties agree also that Tanberg was served intoxicating liquor at the N.C.O. Club. They disagree regarding the amount consumed and its subsequent effect on Tanberg's driving, as well as the responsibility of the Air Force personnel who were acting as bartenders.

Tanberg testified that while he was in the club (between approximately 10:00 P.M. and 2:00 A.M.) he had six or eight drinks of whisky with coke or seven-up, and that he was "feeling good" when he left the club, except that he was upset because the girl he had escorted to the dance had left him for another airman.[10]

7. Defendant also assumes "for purposes of argument" that (1) jurisdiction of the Havre Radar Base had not been assumed by the United States, and Montana law relating to the sale, delivery and giving away of intoxicating liquor was applicable; (2) Tanberg was operating his automobile in a grossly negligent manner at the time of the accident; (3) the Air Force personnel at the Base were acting as bartenders at the Non-Commissioned Officers Club, a nonappropriated fund activity of the defendant, and were employees of the club; and (4) on the night in question they sold and served intoxicating liquor to Tanberg, who was then a minor.

8. R.C.M.1947, § 32-1114 provides that, "Any person riding in a motor vehicle as a guest or by invitation and not for hire,

assumes as between owner and guest ordinary negligence of the owner or operator of such motor vehicle."

9. The testimony of the highway patrolman with respect to the course traveled by the vehicle after it left the highway, as well as the testimony of the three occupants, afford convincing, if not conclusive, proof that the vehicle was being operated in a grossly negligent manner.

10. Tanberg testified:
"Q Referring again to the question of your intoxication, did I understand you to describe your condition as feeling good?
"A That's sort of a technical point. I was feeling good but the shock of my girl leaving—I couldn't say now as to what kind of a state I was in." (Tr. p. 17, lines 6–11.)

Wanda McNight (formerly Wanda Ehry), a 17 year old high school girl who accompanied Tanberg to the party, testified that Tanberg had "quite a few" drinks; that it would be more than six or seven; that he was drinking whisky or vodka; that "(h)e had quite a bit to drink" and she "would say he was very high" when he left the club.

The plaintiff testified that she did not spend much time around Tanberg at the club but that she did see him "walk around with a drink in his hand". Freeland testified that he had observed Tanberg drinking at the club but did not know how much; that he had seen Tanberg drink heavily on other occasions; that when Freeland asked Tanberg to take Sandra and him to Havre Tanberg did not appear "intoxicated, but he was pretty close" and that "about everybody else was intoxicated too"; [11] that Freeland and Sandra were in the car 15 or 20 minutes when Tanberg came to the car and Tanberg appeared to have had more to drink in the meantime.

Joan Conley Gaspard, another 17 year old girl, testified that she observed Tanberg drinking at the party; that he was drinking quite a bit ("we all were"); that she observed Wanda Ehry leave the club sometime after midnight and at that time Tanberg "was pretty well drunk"; that after Wanda left, Tanberg came back to the table and when he found Wanda had left with another airman "went to the bar and got a bottle from behind the bar and a shot glass, and poured three shots, straight shots of some whisky or bourbon or scotch and drank them * * (in) less than a minute". She observed Sandra and Freeland leave the club about half an hour before Wanda.

On cross-examination Joan testified further that Tanberg served himself the last three shots of whisky; while the bartender was at the other end of the bar; that Tanberg did not pay for these drinks; that the bartender took the bottle and glass away from Tanberg and was trying "to quiet him down"; that Tanberg was upset because of his fight with Wanda and "was very high" but not "completely drunk" when Sandra and Freeland left the club.

Both the plaintiff and Freeland testified that when Tanberg came to the car he couldn't find his key, threw everything out of his pockets, and finally found the key and started the car; that he came out with a drink in his hand and threw the glass on the parking lot.

From the time they left the Base, Tanberg drove at a high rate of speed. Apparently they followed another car in which Wanda was riding. This car parked and Tanberg tried to talk to Wanda, but she refused to talk to him. Tanberg then got back in his car, and according to Freeland "turned it around in one sweep and took off toward town"; that he was going fast enough that Freeland "was scared"; that on two occasions Freeland asked Tanberg to slow down; that Tanberg was unable to make the curve where the accident occurred, and the car left the highway. Freeland was thrown from the car and escaped with minor injuries. Tanberg and Sandra were pinned in the car and sustained very serious injuries.

According to Howard Lem, the highway patrolman who investigated the accident, the car traveled 225 feet down an embankment where it "made its first roll over", flipped a fence into a plowed field, where it traveled for 30 feet, rolled 36 feet, traveled 60 feet, clearing a group of trees and shrubs ten or twelve feet high before it came to rest; that "after the

11. Freeland testified further that when interviewed by Colonel Kincaid of the Air Force shortly after the accident, he told Colonel Kincaid that Tanberg was not intoxicated; that he understood that they wanted to prove that Tanberg was not intoxicated so that they could retire him, because he was paralyzed, and that this might have some bearing on the benefits Tanberg would receive. In a subsequent statement and at the trial, Freeland was consistent in expressing his opinion that Tanberg was intoxicated at the time of the accident.

fence" the car took "one and a half roll overs before going over the trees and into its final resting place". Lem estimated the car must have been traveling at a speed between 85 and 100 miles an hour when it left the highway.

Lem could smell alcohol on Tanberg and wanted to have a blood test taken, but the doctor refused because of Tanberg's condition, feeling that it would be unsafe to take the blood sample.

The foregoing summarizes the testimony offered at the trial. Sergeant Brammier, who was in charge of the bar, did not testify; nor did any of the other bartenders. There was no evidence to contradict the testimony set forth above relative to the dispensing of liquor to the minor airmen and civilians and the amount of liquor consumed by Tanberg.

Non-appropriated fund instrumentalities are "integral parts of the Government's military services". United States v. Forfari, 9 Cir. 1959, 268 F.2d 29, 31, cert. den. 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157. Mess clubs, post exchanges, stores, and similar nonfunded agencies, operated for the benefit of servicemen and their guests, have been held to be "federal agencies" within the meaning of the Federal Tort Claims Act, 28 U.S.C. § 2671. See United States v. Holcombe, 4 Cir. 1960, 277 F.2d 143; Grant v. United States, 2 Cir. 1959, 271 F.2d 651; United States v. Howell, 9 Cir. 1963, 318 F.2d 162, 167. Defendant admits "for the purpose of argument" that Air Force personnel were acting as bartenders at the N.C.O. Club, "a nonappropriated fund activity of the defendant, and were employees of the club".

It is clear from the evidence that the United States had not accepted jurisdiction over the Air Base site pursuant to federal or state law. The State of Montana accordingly had jurisdiction and Montana law is applicable. This also is assumed "for the purpose of argument" in defendant's post-trial brief.

In view of the assumptions and the concessions of the defendant in its post-trial brief, we are now concerned primarily with four issues:

1. Was Tanberg's drinking a proximate cause of the accident and resulting injuries to plaintiff?

2. Was the liquor resulting in his intoxication sold or given to him by the Air Force personnel?

3. If so, was defendant liable under Montana law for furnishing the liquor to Tanberg?

4. In the event the first three issues are resolved in favor of the plaintiff (a) did plaintiff assume the risk or (b) was she guilty of contributory negligence?

The court finds from the evidence:

1. On May 30–31, 1963, Gerald B. Tanberg was a minor of the age of 19 years.

2. The Air Force personnel at the Non-Commissioned Officers Club at Havre Radar Base sold or otherwise dispensed intoxicating liquor to Tanberg on the night of May 30 and early morning of May 31, 1963, knowing Tanberg was a minor.

3. Tanberg consumed an excessive amount of liquor and became intoxicated.

4. The Air Force personnel dispensing liquor knew that Tanberg was drinking to excess and thereafter continued to dispense liquor to him.

5. Many of the airmen at the party and most, if not all, of the girls were minors, including many high school girls 16, 17 and 18 years of age, and this was known to the Air Force personnel dispensing liquor to them.

6. Plaintiff and other civilians at the Club party came to the Havre Radar Base from Havre, a distance of 39 miles, by private automobile, and this was known to the Air Force personnel dispensing liquor at the club.

7. The only available transportation for plaintiff and others attending the party to return from the Base to Havre, was by private automobile operated by Air Force personnel, and this was known to the personnel dispensing liquor.

8. Gerald R. Freeland requested Tanberg to take plaintiff and Freeland from the Base to Havre. Tanberg agreed to do

so. Plaintiff and Freeland rode in the back seat of Tanberg's automobile with Tanberg driving.

9. Tanberg drove his automobile at an excessive rate of speed and in a grossly negligent and reckless manner.

10. Freeland twice requested Tanberg to slow down.

11. While Tanberg was driving in a grossly negligent and reckless manner, his automobile left the highway and rolled over, with resulting injury to plaintiff.

12. Tanberg's intoxication was the proximate cause of his grossly negligent and reckless operation of his automobile, in consequence of which plaintiff was injured.

As noted supra, any person who sells, delivers or gives away or permits to be sold, delivered or given away any liquor to any person under the age of 21 years or any "intoxicated person or any person actually, apparently or obviously intoxicated" is guilty of a misdemeanor under Montana law. There was a clear and flagrant violation of Montana law in the sale of intoxicating liquor to Tanberg (as well as many others under 21 years of age) and in the sale or permitting liquor to be sold or given to Tanberg (and others) when Tanberg was "actually, apparently or obviously intoxicated".

Montana does not, however, have a "Civil Damage Act" or "Dram Shop Act".[12] In the absence of such a statute, is there a right of action under Montana law against the person selling or furnishing intoxicating liquor to a minor or intoxicated person in favor of a person injured by the intoxicated person as a consequence of his intoxication?

This question has not been determined by the Montana court, and there is a sharp conflict in the authorities in other jurisdictions.

The earlier cases held almost uniformly that there was no right of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee, the courts taking the position that the proximate cause of the injury was the consumption and not the illegal sale of the liquor. A leading case adopting this view (and reviewing earlier decisions of other courts) is Fleckner v. Dionne, 94 Cal.App.2d 246, 210 P.2d 530, decided by the Supreme Court of California in 1949, with two justices dissenting. This case involved the sale of liquor to a minor while he "was already under influence of intoxicating liquor". The minor, while driving his automobile under the influence of liquor collided with another vehicle, resulting in injury to the occupants of that car.[13] Fleckner v. Dionne was followed in Cole v. Rush, 45 Cal.2d 345, 289 P.2d 450, 54 A.L.R.2d 1137, decided by the California Supreme Court in 1955.

The holding in Fleckner v. Dionne and Cole v. Rush was sharply criticized in Fuller v. Standard Stations, Inc., 250 Cal. App.2d 687, 53 Cal.Rptr. 792, decided in 1967 by the Court of Appeals, Third District, California, the court describing the California rule as a "back-eddy running counter to the mainstream of modern tort doctrine". Three justices affirmed the trial court's order of dismissal on the ground that stare decisis required adherence "to the rule of Fleckner v. Dionne, supra, as crystallized in California law by the Supreme Court's opin-

12. Many states have enacted statutes giving a right of action to persons injured by an intoxicated person or in consequence of the intoxication of any person against the person selling or furnishing the liquor which caused the intoxication. These statutes, commonly known as "Civil Damage Acts" or "Dram Shop Acts" are "not in any sense common-law negligence actions", but confer "new, separate and distinct rights of action".

30 Am.Jur. 824, Intoxicating Liquors, § 525.

13. The dissenting opinion raises this question: "If it is negligence to entrust an automobile to an intoxicated person or one addicted to intoxication (as the California court has held) why is it not negligence to furnish liquor to a person to the point of intoxication knowing that he is going to drive an automobile while in that condition?" (210 P.2d at 535).

ion in Cole v. Rush". Three justices dissented.

In Murray v. United States, 9 Cir. 1967, 382 F.2d 284, the court denied recovery in a wrongful death action arising out of the Government furnishing alcoholic beverages to a member of a Government vessel at a ship's party. Calling attention to the fact that the "parties concede that California law is controlling", the court held that it was bound by the California cases "in the absence of a contrary ruling by the Supreme Court of California" and that it should not anticipate, "even had we the power and prophetic ability to do so, that California may alter its existing rule at some future time".

Other cases denying recovery on the ground that the proximate cause of injury is the buyer's act in drinking the liquor and that the vendor's act in selling is too remote to be a proximate cause include Collier v. Stamatis, 1945, 63 Ariz. 285, 162 P.2d 125; Hall v. Budagher, 1966, 76 N.M. 591, 417 P.2d 71; Megge v. United States, 6 Cir. 1965, 344 F.2d 31;[14] Cowman v. Hansen, 1958, 250 Iowa 358, 92 N.W.2d 682; Stringer v. Calmes, 1949, 167 Kan. 278, 205 P.2d 921; State for Use of Joyce v. Hatfield, 1951, 197 Md. 249, 78 A.2d 754; Beck v. Groe, 1955, 245 Minn. 28, 70 N.W.2d 886, 52 A.L.R.2d 875; Seibel v. Leach, 1939, 233 Wis. 66, 68, 288 N.W. 774.[15]

In recent years the courts in a number of jurisdictions have re-examined the common law right of action in the light of present day conditions, with the result that a growing number of cases have carved out exceptions to the common law rule. In particular, while recognizing its application to the "able bodied man", an exception has been made where liquor is furnished to a minor or a person obviously intoxicated, in violation of a statute. A leading case is Rappaport v. Nichols, 1959, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821, where the court said in part:

"Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. The Legislature has in explicit terms prohibited sales to minors as a class because it recognizes their very special susceptibilities and the intensification of the otherwise inherent dangers when persons lacking in maturity and responsibility partake of alcoholic beverages; insofar as minors are concerned the sale of the first drink which does 'its share of the work' (Taylor v. Wright, 126 Pa. 617, 621, 17 A. 677, 678 (1889)) and which generally leads to the others is unequivocally forbidden. * * *

"When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent. See National Safety Council, Accident Facts, p. 49 (1959 ed.); * * * If the patron is a minor or is intoxicated when served, the tavern keeper's sale to him is unlawful; and if the circumstances are such that the tavern keeper knows or should know

14. While Megge v. United States in many respects is factually in point, it is clearly distinguishable. It was there held that the club at the Air Force Base was not a "vendor" within the meaning of the Michigan Liquor Control Act and that the sale of liquor accordingly "cannot be said to be an unlawful sale". The Montana Statute is not limited to a vendor but applies to anyone dispensing liquor to minors and persons who are intoxicated.

15. For additional cases see 48 C.J.S. 1968 Supp., Intoxicating Liquors, § 430, footnote 80.

that the patron is a minor or is intoxicated, his service to him may also constitute common law negligence." (156 A.2d at 8–9, 75 A.L.R.2d at 830).[16]

Rappaport v. Nichols and Waynick v. Chicago's Last Department Store were followed in Berkeley v. Park, 1965, 47 Misc.2d 381, 262 N.Y.S.2d 290, the court referring to the two prior cases as declaring that "modern conditions dictate the adaptation of the common law" and continuing in part:

"This attitude has received favorable comment from law review articles. See 60 Colum.L.Rev. 554 (1960), * * * These cases rejected as simply unreal the distinction that the selling of alcohol is only a remote cause of resulting intoxication while the consumption is a proximate cause. * *

" * * * Today, the hazards of travel by automobiles on modern highways has become a national problem. The drunken driver is a threat to the safety of many. The responsibility of a tavern keeper for contributing to the intoxication of a patron has long been regulated by statute (Alcoholic Beverage Control Law). It is understandable that early cases did not recognize any duty of an innkeeper to the traveling public because a serious hazard did not exist. Through lack of necessity, this phase of negligence liability did not develop. However, there did exist General Common Law Rules of negligence liability based on foreseeability and proximate cause. It is a well established, sound principle of legal philosophy that the common law is not static. Under the skillful interpretation of our Courts, it has been adapted to changing times and conditions of our civilization."

The trend of recent cases to permit recovery where a statute makes it illegal to sell or dispense liquor to minors and intoxicated persons is perhaps best illustrated by the Indiana case of Elder v. Fisher, 247 Ind. 598, 217 N.E.2d 847, where a retail druggist sold liquor to a 17 year old boy, who became drunk and drove an automobile, which was involved in an accident with resulting injury to plaintiff's ward. The trial court dismissed the action, holding in part that the statute prohibiting sales to minors was enacted for the benefit of the minors, and not for public safety. The appellate court affirmed. 205 N.E.2d 335. In reversing, the Supreme Court of Indiana first held that "the statute was designed to protect the people of the state", including plaintiff's ward. After referring to Rappaport v. Nichols, supra, and other "recent" cases, the court said in part:

"In all of the above cited cases, reference was made to a prohibitory statute forbidding the sale of intoxicating liquor to minors or intoxicated persons.

"The crucial issue in all of the cases involving liability of a seller of alcoholic beverages seems to be the matter of proximate cause. Many of the cases constantly cited have arbitrarily held that the selling of the intoxicating liquor is too remote in time to be a proximate cause of resulting injury.

"However, it is well settled that for a negligent act or omission to be a proximate cause of injury, the injury need be only a natural and probable result thereof; and the consequence be one which in the light of the circumstances should reasonably have been foreseen or anticipated." (217 N.E.2d 852).

A recent case permitting recovery against a person who sold liquor illegally to a person obviously intoxicated is Adamian v. Three Sons, Inc., 1968, 353 Mass. 498, 233 N.E.2d 18, where the Supreme Judicial Council of Massachusetts said in part: "A violation of a criminal statute is some evidence of the defendant's

16. Another early case expressly recognizing the distinction between an "able bodied man" and a minor or one obviously intoxicated is Waynick v. Chicago's Last Department Store, 7 Cir. 1959, 269 F.2d 322, 77 A.L.R.2d 1260.

negligence as to all consequences the statute was intended to prevent."

The court referred to the "strong recent trend * * * that the sale by a bartender to an intoxicated drinker may be found to be the proximate cause of an injury to a third person caused by the drinker's driving of an automobile". The court concluded: "Henceforth in this Commonwealth waste of human life due to drunken driving on the highways will not be left outside the scope of the foreseeable risk created by the sale of liquor to an already intoxicated individual." [17]

In the recent case of Meade v. Freeman, Idaho, 462 P.2d 54, decided August 28, 1969, the Supreme Court of Idaho in a three to two decision followed what the majority deemed to be the common law rule that it is the consumption and not the sale of liquor which is the proximate cause of a resulting automobile accident.[18] The majority opinion suggests that those courts which have permitted recovery "are basically unable to disenthrall themselves of the lurking suspicion that liquor in and of itself is evil".

The minority opinion suggests that, "The key to the supposed common law rule of non-liability is found in the words 'sale to ordinary able-bodied men'" and agrees that the supplier of liquor "should not be bound as a matter of law to foresee that such a person would drink to the point of intoxication". In following the rule of those courts which have held that a different rule should be followed with respect to a sale to persons who are obviously or apparently intoxicated, the minority opinion says in part: "Revision

of an outmoded common law rule is within the competence of the judiciary, and indeed it is the duty of the courts to bring the law into accordance with present day standards of wisdom and justice * * * (I)t affronts and abuses one's sense of logic to contend that in today's society that the furnishing of more intoxicants to one who is already actually, obviously and apparently intoxicated can not be a contributing proximate cause of ensuing automobile accidents caused by the intoxicated person".

In discussing "Foreseeable Intervening Causes" Prosser on Torts, 3rd Ed., says in part: "If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent, among other reasons, because he has failed to guard against it; or he may be negligent only for that reason. * * * If a gun is entrusted to a child, it suggests at once to anyone with any imagination at all that someone, the child or another, is likely to be shot." (pp. 311–312). A footnote following this rule cites "Rappaport v. Nichols, 1959, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (liquor)." (Rappaport is cited four times by Prosser, with apparent approval).

An article in 60 Col.L.R. 554, 557, in referring to Rappaport v. Nichols, supra, reads in part:

"* * * (T)he argument that the proximate cause was the consumption rather than the sale of liquor is, as the court points out, clearly untenable in light of the many cases holding

---

17. Other cases permitting recovery include Galvin v. Jennings, 3 Cir. 1961, 289 F.2d 15; Soronen v. Olde Milford Inn, 1964, 84 N.J.Super. 372, 202 A.2d 208, aff. 46 N.J. 582, 218 A.2d 630; Colligan v. Cousar, 1963, 38 Ill.App.2d 392, 187 N.E.2d 292; Mitchel v. Ketner, Tenn. 1964, 54 Tenn.App. 656, 393 S.W.2d 755, 758; Ramsey v. Anctil, N.H.1965, 106 N.H. 375, 211 A.2d 900, 901; Majors v. Brodhead Hotel, Pa.1965, 416 Pa. 265, 205 A.2d 873; Mitchell v. Shoales, Inc.,

N.Y.1967, 19 N.Y.2d 338, 280 N.Y.S.2d 113, 227 N.E.2d 21; Pike v. George, Ky.1968, 434 S.W.2d 626.

18. The majority opinion also called attention to the fact that Idaho once had a Dram Shop Act which had been repealed by implication and suggests that, "To state, in such a situation, that the legislature intended the continuation of the liabilities flies in the face of all logic".

that a reasonably foreseeable intervening cause will not relieve the original tort of liability. Moreover, proximate cause is, as the instant court recognizes, often a question of policy, and the increased incidence of automobile accidents resulting from drunken driving justifies the change in attitude toward vendors of alcoholic beverages and departure from a rule formulated at a time when this threat was non existent. * * * "

The rule of "foreseeability" was followed in Ira S. Bushey & Sons, Inc. v. United States, 2 Cir. 1968, 398 F.2d 167, where the court affirmed an award to a drydock owner for damages to the drydock caused by the conduct of an intoxicated seaman living aboard a Coast Guard vessel in opening a drydock valve thereby causing the drydock to sink, the court holding that the seaman's "conduct was not so 'unforeseeable' as to make it unfair to charge the Government with responsibility". The court said in part: "Here it was foreseeable that the crew members crossing the drydock might do damage, negligently or even intentionally, such as pushing a Bushey employee or kicking property into the water. Moreover, the proclivity of seamen to find solace for solitude by copious resort to the bottle while ashore has been noted in opinions too numerous to warrant citation. Once all this is granted, it is immaterial that Lane's precise action was not to be foreseen." (398 F.2d at 171, 172). We agree with counsel for the defendant that factually this case is distinguishable, but the reference to the rule of foreseeability is pertinent.

Supplementing the references in many of the cases to studies showing the frequency of accidents caused by drunken drivers, we find that the "1968 Alcohol and Highway Safety Report" submitted to Congress by the Secretary of the Department of Transportation states:

"The use of alcohol by drivers and pedestrians leads to some 25,000 deaths and a total of at least 800,000 crashes in the United States each year. Especially tragic is the fact that much of the loss in life, limb, and property damage involves completely innocent parties.

"The problem was first identified in 1904, and was first shown to be serious in 1924. Since then, every competent investigation has demonstrated that the immoderate use of alcohol is a very major source of highway crashes, especially of those most violent. In fact, it contributes to about half of all highway deaths, and to appreciable percentage of the far more numerous nonfatal crashes."

The increasing frequency of serious accidents caused by drivers who are intoxicated is a fact which must be well known to those who sell and dispense liquor. This lends support to those cases which have found the automobile accident to be "the reasonably foreseeable" result of furnishing liquor to the intoxicated driver, at least where the person furnishing the liquor knew that the intoxicated person would be driving on a public highway.

This court held in Howard v. Sisters of Charity of Leavenworth, 1961, D.C., 193 F.Supp. 191, 194, that in the absence of any decision of a Montana court it is proper to follow the trend of the modern decisions. That case involved the question of the immunity of charitable corporations from tort liability for the negligence of its employees, and the modern trend was clearly discernible. Here, however, there is a sharp conflict in the "recent" cases.

In attempting to determine Montana law under these circumstances, it seems advisable first to refer in more detail to the Montana law regulating the dispensing of intoxicating liquors. The Montana Retail Liquor License Act, §§ 4–401 —4–441, R.C.M.1947, regulates and controls the sale of alcoholic beverages in the State of Montana. Section 4–401 declaring the policy of the state includes the provision that, "'The restrictions, regulations and provisions contained in this act are enacted by the legislature for

the protection, health, welfare and safety of the people of the state". [19]

The Act includes strict provisions prohibiting the sale of alcoholic beverages to minors and those who are "actually, apparently or obviously intoxicated". An amendment to section 4–413 in 1953 [20] made the statute applicable to "any other person", [21] as well as to licensees and their employees. The Act, including section 4–413 prior to the 1953 amendment, was construed in State v. Erlandson, 1952, 126 Mont. 316, 249 P.2d 794. In affirming the conviction of the tavern owner for the sale of beer to a person under the age of 21 years, the court said in part:

> "The acts (State Liquor Control Act and Montana Beer Act) are police regulations enacted pursuant to the police power of the state. * * * The acts and deeds therein condemned and prohibited are mala prohibita as distinguished from acts mala in se. As to acts mala in se the intent governs but as to those mala prohibita the only inquiry is: Has the law been violated?" [22]

The violation of a statute enacted for the safety of the public is negligence per se. Daly v. Swift & Co., 1931, 90 Mont. 52, 300 P. 265; Burns v. Fisher, 1957, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R. 2d 1; Rader v. Nicholls, 1962, 140 Mont. 459, 462, 373 P.2d 312; Hurly v. Star Transfer Co., 1962, 141 Mont. 176, 376 P. 2d 504; Faucette v. Christiansen, 1965, 145 Mont. 28, 400 P.2d 883; Presser v. Anderson, 1965, 146 Mont. 396, 407 P.2d 41; Baumgartner v. National Cash Register, 1965, 146 Mont. 346, 406 P.2d

686; Williams v. Maley, 1967, 150 Mont. 261, 434 P.2d 398.

I have no difficulty in finding that (1) defendant's agents violated the Montana law in furnishing intoxicating liquor to Tanberg, knowing Tanberg was a minor and obviously or apparently intoxicated, and (2) Tanberg's intoxication was responsible for his grossly negligent and reckless operation of his automobile, resulting in plaintiff's injury. The sole question is whether the furnishing of the intoxicating liquor to Tanberg in violation of Montana law may be considered a proximate cause of the accident and resulting injuries to plaintiff.

■ Defendant argues that Montana should follow the California court. It is true of course that where Montana has adopted a California statute or the two statutes are identical, a construction by the California court is persuasive. The Montana statute in question was not taken from California, although its provisions are not essentially different from those contained in California General Laws, Act 3796 (§§ 61 and 62), Alcoholic Beverage Control Act [West's Ann. Bus. & Prof.Code, §§ 25602, 25658, 25661, 25662].

Fleckner v. Dionne, supra, was decided by the California Supreme Court in 1949 and followed in Cole v. Rush, supra, decided in 1955. Fuller v. Standard Stations, Inc., supra, decided by the Court of Appeals, Third District, in 1967 followed the earlier rule as stare decisis but termed it a "back-eddy running counter to the mainstream of modern tort doctrine". [23]

---

19. Those cases from other jurisdictions in which there was no statutory prohibition against the sale to minors and intoxicated persons and those which hold that statutes were enacted only for the benefit of minors or intoxicated persons are distinguishable in view of the express provision of Section 4–401, supra, that the Act was "enacted by the legislature for the protection, health, welfare and safety of the people of the state".

20. Probably as a result of State v. Holt, 1948, 121 Mont. 459, 194 P.2d 651 limit-

ing the application of the prior statute to licensees and employees.

21. Section 4–402 defines a "person" as "every individual * * *, corporation * * * club and fraternal organization * * *".

22. See also State v. Paskvan, 1957, 131 Mont. 316, 309 P.2d 1019; State ex rel. Geschwender v. La Rowe, 1959, 136 Mont. 591, 341 P.2d 906.

23. Fuller v. Standard Stations, Inc., was cited in Adamian v. Three Sons, Inc., supra.

The Fleckner v. Dionne rule was considered again in a 1968 decision of the Court of Appeals, Fifth District, Brockett v. Kitchen Boyd Motor Co., 264 Cal. App.2d 69, 70 Cal.Rptr. 136. In that case plaintiffs were injured in an automobile collision with a car driven by an intoxicated minor, an employee of the defendant. The complaint alleged that the defendant had served the minor liquor at a Christmas party, that the minor's drunken condition became obvious to the defendant, that defendant assisted the minor to his car and directed him to drive home. Relying upon Fleckner v. Dionne and Cole v. Rush, the trial court sustained a demurrer to the complaint without leave to amend. In reversing, the Court of Appeals recognized the Fleckner v. Dionne rule,[24] but distinguished it on the ground that in aiding the minor to his car and directing him to drive home, the defendant actively participated in the tort against plaintiff.

In Nevin v. Carlasco, 1961, 139 Mont. 512, 515, 365 P.2d 637, 639, the court affirmed a judgment of nonsuit denying recovery for injuries sustained by plaintiff, a female patron of a bar, when a male patron, who, as he attempted to kiss plaintiff, was shoved, and fell off a bar stool and knocked plaintiff to the floor. After pointing out the lack of circumstances which must ordinarily exist to impose the duty upon a tavern keeper to protect his patrons, in answering appellant's contention that certain laws of Montana dealing with the liquor business were violated, the court said:

"If we were to accept this contention the evidence is devoid of any knowledge on the part of respondents of the violation of any of these statutes. The rule followed by most courts is that when damages arise from voluntary intoxication, the seller of the intoxicant is not liable in tort for the reason that his act is not the efficient cause of the damage. The proximate cause is the act of him who imbibes the liquor.

"The appellant was obliged to prove a set of circumstances which created a duty to the injured patron and facts that would prove a breach of that duty. See Fleckner v. Dionne, 94 Cal.App.2d 246, 210 P.2d 530. Having failed to do so the judgment of the district court was correct and it is hereby affirmed."

The reference to Fleckner v. Dionne, supra, might indicate that Montana would follow California in holding that the furnishing of liquor was not the proximate cause of plaintiff's injury. On the other hand, the court indicates also that there might be "a set of circumstances" which would create a duty to an injured person. The Montana court did not of course consider the question here presented or the cases permitting recovery, most of which have been decided since 1961.

The rule in Montana on proximate cause was summarized in Sztaba v. Great Northern Railway Company, 1966, 147 Mont. 185, 195, 196, 411 P.2d 379, 385, as follows:

"Causation is a fact. It is important to determine causation first to avoid its confusion with the issues to follow. This is not a relationship between negligence and injury, but rather a causal relation between conduct and hurt, both of which are factual concepts. It is only after the causal relationship, duty, and its scope are found that the negligence issue is reached. 61 Col.L.R. 1401.

"The test most generally employed in determining causation is the 'but for' test. Montana has adopted this test in numerous cases.

24. The court said: "Although the rule has been subjected to multiple adverse criticism and is not effective in many other states (Fuller v. Standard Stations, Inc., supra, 250 Cal.App.2d 687, 58 Cal. Rptr. 792), there can be no question that it is effective in California under the present enunciation of the law; this appellate court, of course, is bound by the rule as stated by the Supreme Court." (70 Cal.Rptr. at 138).

"Proximate cause is one 'which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred.'

\*  \*  \*  \*  \*  \*

"At most, the 'but for' or 'sine qua non' test is but one of exclusion. In other words, the defendant's conduct is not the cause of the event, if the event would have occurred without it."

The Montana court has never required that the "specific injury" which occurred be " 'specifically anticipated as the natural and probable consequence of the wrongful act. It is sufficient if the facts and circumstances are such that the consequences attributable to the wrongful conduct charged are within the field of reasonable anticipation; that such consequences might be the natural and probable results thereof, though they may not have been specifically contemplated or anticipated by the person so causing them.' " Reino v. Montana Mineral Land Development Co., 1909, 38 Mont. 291, 295, 296, 99 P. 853, 855.[25]

Likewise, where several causes each contribute to produce an injury, " '(t)he test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequence, and if such result is attributable to the original negligence as a result which might reasonably have been foreseen as probable, the liability continues.' " Mize v. Rocky Mountain Bell Telephone Co. et al., 1909, 38 Mont. 521, 532, 100 P. 971, 973.

Applying these rules to the facts in the instant case, in my opinion the employees of the United States who sold and served the liquor to an intoxicated minor, knowing that it would be necessary for the airmen at the party to return their dates to Havre by private automobile, could reasonably foresee or anticipate some accident or injury as a reasonable and natural consequence of their illegal and negligent acts, particularly in view of the ever increasing incidence of serious automobile accidents resulting from drunken driving.

■ Accordingly in the absence of any controlling authority in the Montana court, I choose to follow what I deem to be the proper rule and hold that under the particular circumstances of this case the sale and serving of liquor to Tanberg in violation of Montana law was a proximate cause of the accident and resulting injuries to plaintiff. In my opinion this conclusion is consistent with the rules of proximate cause and foreseeability followed by the Montana court.[26]

Defendant contends further that plaintiff is barred because (1) her own negligence was a proximate cause of the accident; and (2) she assumed the risk. In particular, it is urged that plaintiff's "knowledge of Tanberg's intoxication, emotional agitation and frenzied actions before they left the Base, and her failure to get out of the car at that time, should in itself constitute a complete defense \* \* \* on the ground that she understood and assumed the risk of his driving"; and that if she did not appreciate the risk before the car left the Base, she must have appreciated and understood the risk "after having undergone the experience of the wild and hazardous ride she described having taken from the Base" to the point where Tanberg stopped to see Wanda. Elsewhere in its brief, defendant argues that

25. See also Therriault v. England, 1911, 43 Mont. 376, 383, 116 P. 581; Heckaman v. Northern Pacific Railway Co., 1933, 93 Mont. 363, 20 P.2d 258; Sult v. Scandrett, 1947, 119 Mont. 570, 168 P.2d 405; Merithew v. Hill, D.Mont. 1958, 167 F.Supp. 320, 327, 328.

26. If this were a diversity case I would certify the question to the Supreme Court of Montana pursuant to the Court's amended Rule 1. Since this action is prosecuted under the Federal Tort Claims Act and the Montana courts would have no jurisdiction, I question whether Rule 1 is applicable.

Tanberg "apparently drove skillfully, though with reckless speed, over a winding road for a distance of nine miles from the base until he caught up with the other car in which his girl friend was a passenger indicating that his consumption of liquor had not destroyed his driving skill". The court can not accept either of these rather inconsistent statements as entirely correct.

It is true that plaintiff testified that she observed Tanberg at the Club walking around with a drink in his hand and knew he had been drinking, but she did not know how much. Freeland, her escort, not the plaintiff, requested the ride to Havre. When Tanberg agreed, Freeland and plaintiff went to his car and were in the back seat when Tanberg arrived some 15 or 20 minutes later. It appears from the testimony of other witnesses that Tanberg had consumed more liquor in the meantime. Tanberg's actions when he got into the car might well have suggested to a more mature person that she should seek other transportation to Havre, but I cannot find from the evidence that plaintiff appreciated Tanberg's state of intoxication at that time.

When Tanberg stopped and attempted to talk to Wanda, she refused. According to Freeland, Tanberg then got back in the car "turned it around in one sweep and started off to town". The stop was momentary, and under the circumstances I cannot find that plaintiff was negligent in failing to get out of the car, particularly on a county road 22 miles from Havre at 3:00 o'clock in the morning. Freeland twice asked Tanberg to slow down.

■ It is of course well settled in Montana that to bar a recovery, the plaintiff must not only be negligent, but his negligence must be a proximate rather than a remote cause of the injury. Dahlin v. Rice Truck Lines, 1960, 137 Mont. 430, 436, 352 P.2d 801; Sztaba v. Great Northern Ry., supra; Graft v. Crooker, D.C.Mont.1967, 263 F.Supp. 941, 942; aff. 9 Cir. 1968, 394 F.2d 2. Moreover, "In making a choice between two courses to pursue, one is not required to make the correct choice in the light of after-events, but only such as a reasonably prudent person might make under the known or obvious circumstances". Stevens v. City of Butte, 1938, 107 Mont. 354, 365, 85 P.2d 339, 343; Stahl v. Farmers Union Oil Company, 1965, 145 Mont. 106, 111, 399 P.2d 763.

■ Bearing in mind that plaintiff was a 17 year old high school junior, who had been drinking beer herself (also furnished illegally by the defendant's employees) and who relied upon her date to arrange for the transportation to Havre, and viewing the evidence as a whole, I find that plaintiff in the circumstances acted as a reasonably prudent person and was not guilty of contributory negligence.[27]

■ Nor do I find that plaintiff assumed the risk. There is of course a distinction between contributory negligence and assumption of risk. Contributory negligence arises from a lack of due care. Assumption of risk will bar recovery regardless of the fact that plaintiff may have acted with due care. It is available when there has been a voluntary assumption of a risk, and such assumption has been made with knowledge and appreciation of the risk. See Zimmer v. California Company, D.C.Mont. 1959, 174 F.Supp. 757, 765, and cases there cited and discussed.

27. In view of this finding and conclusion, it is unnecessary to review those cases, some under Dram Shop Acts and some decided under the common law, holding that an intoxicated motorist or passenger is not necessarily barred by his own contributory negligence from recovery for injuries sustained in an automobile accident from a tavern owner for selling to the motorist intoxicating beverages while the motorist was intoxicated. See e. g., Hempstead v. Minneapolis Sheraton Corporation, Minn.1969, 166 N.W.2d 95; Mitchell v. Shoals, Inc., 1967, 19 N.Y. 2d 338, 280 N.Y.S.2d 113, 227 N.E.2d 21; Majors v. Brodhead Hotel, 1965, 416 Pa. 265, 205 A.2d 873; Contra, Ramsey v. Anetil, 1965, 106 N.H. 375, 211 A.2d 900; James v. Wicker, 1941, 309 Ill. App. 397, 33 N.E.2d 169.

While the defense of assumption of risk is usually asserted in employer-employee cases, in Montana the defense has been extended to "relationships independent of the master-servant relationship". Cassaday v. City of Billings, 1959, 135 Mont. 390, 392, 340 P.2d 509, 510 and cases there cited. Assumption of risk is governed by the subjective standard of the plaintiff rather than the objective standard of the reasonable man. Four elements must be proved to establish assumption of risk: "(1) knowledge, actual or implied, of the particular condition; (2) appreciation of this condition as dangerous; (3) a voluntary remaining or continuing in the face of the known dangerous conditions; (4) injury resulting as the usual and probable consequence of this dangerous condition." D'Hooge v. McCann, 1968, 151 Mont. 353, 363, 443 P.2d 747, 752. Defendant has failed to establish these elements.

Finally defendant argues that Tanberg's emotional disturbance by reason of being jilted by his date and his serving himself the extra shots of whisky would constitute a superseding intervening cause. I find no merit in this contention.

The rules here applicable in determining whether an intervening act of a third party is a superseding cause of harm to the injured person are well stated in Restatement Torts, Second, as follows:

" § 442A. Intervening Force Risked by Actor's Conduct

"Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm such intervention is not a superseding cause."

" § 442B. Intervening Force Causing Same Harm as That Risked by Actor's Conduct

"Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct."

" § 443. Normal Intervening Force

"The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about."

The comment indicates that this rule applies to acts done by the person who is harmed or by a third person "as a normal response to the stimulus of a situation created by the defendant's negligence".

" § 444. Acts Done Under Impulsion of Emotional Disturbance

"An act done by another in normal response to fear or emotional disturbance to which the actor's negligent conduct is a substantial factor in subjecting the other is not a superseding cause of harm done by the other's act to himself or a third person."

Under these rules Tanberg's subsequent conduct was not a superseding cause.

I conclude that plaintiff is entitled to recover damages for the injuries sustained in that (1) defendant's agents violated Montana law and were negligent in selling and furnishing liquor to Tanberg, knowing Tanberg was a minor and obviously or apparently intoxicated; (2) defendant's agents knew that it would be necessary for the girls at the N.C.O. party to return to Havre by private automobile, and that the automobiles of the airmen (including Tanberg's) were the only available means of transportation; (3) Tanberg's intoxication was responsible for his grossly negligent

and reckless operation of his automobile, resulting in plaintiff's injuries; (4) Tanberg's reckless operation of his automobile culminating in the accident was a reasonably foreseeable intervening cause; (5) the sale and furnishing of liquor to Tanberg under all the circumstances was a proximate cause of the accident and resulting injuries to plaintiff; (6) defendant has failed to establish its defenses of (a) contributory negligence; (b) assumption of risk; and (c) superseding intervening cause.

This opinion shall constitute the court's finding of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure on the issue of liability. The parties are granted 15 days for supplemental briefs on the issue of damages.