No. 12796

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

DONALD R. McGEE,

Plaintiff and Respondent,

-vs-

BURLINGTON NORTHERN, INC.,
a corporation,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

Gough, Booth, Shanahan and Johnson, Helena, Montana
Cordell Johnson argued and Ronald F. Waterman argued,
Helena, Montana

For Respondent:

Hoyt and Bottomly, Great Falls, Montana
John C. Hoyt argued, Great Falls, Montana

Submitted: January 14, 1975

Decided: AUG 19 1975

Filed: AUG 19 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an action for damages under the Federal Employers' Liability Act. Plaintiff brakeman sued defendant railroad for injuries he received in a switching accident. The district court, Cascade County, granted plaintiff a partial summary judgment on the issue of liability. The issue of the amount of plaintiff's damages was tried to a jury which returned an 8 to 4 verdict for $525,000. Following entry of judgment thereon and denial of defendant's motion for a new trial, defendant appeals.

Plaintiff is Donald R. McGee, a 44 year old railroad employee with about 20 years experience. Defendant is Burlington Northern Inc., a railroad corporation, which was plaintiff's employer.

The accident forming the basis of this litigation occurred in the railroad yards at Omak, Washington on November 4, 1971 at about 5:45 p.m. Plaintiff, a swing brakeman on a switching crew, was struck from behind by an iron door handle protruding downward and outward from the door of a moving boxcar.

There were no eyewitnesses to the accident. It was dark and switching was being done by lantern. The switch crew consisted of the engineer, the conductor, the head brakeman, the flagman and the swing brakeman (plaintiff). The conductor was not present at the accident site as he was checking a car of fruit in another part of the yard.

Shortly before the accident, the switch engine was on the main line facing east. A boxcar was coupled to the front of the engine with a chip car coupled directly to the boxcar. The switch engine pushed the two cars east along the main line. As the three neared a passing track leading off the main line, plaintiff uncoupled the chip car which was "kicked" upgrade along the main line to a point where the flagman "chopped" the wheels

to prevent it from rolling back down the grade. After "kicking" the chip car up the main line, the switch engine and boxcar came to a stop on the main line with the forward trucks or wheels of the boxcar resting on the switch points of the passing track.

At this point the engineer was in his cab on the south side of the main line; he was facing east. The head brakeman was at the switch box on the north side of the main line. Plaintiff was about ten feet away from the head brakeman and had him in full view. The flagman was some distance away near the chip car.

According to plaintiff, he told the head brakeman that the switch engine and boxcar were going to be moved onto the passing track and the head brakeman acknowledged this verbally. The head brakeman denies plaintiff said anything to him concerning where the boxcar would be "kicked", but he was aware it would go on one of the inside tracks rather than the main line. However, he could not throw the switch because the boxcar "was sitting right on the switch".

Again, according to plaintiff, he started walking east along the south side of the main line and called to the flagman "We are going to pull the pass". The flagman gave a "come ahead" signal with his lantern, which plaintiff repeated to the engineer. The flagman confirmed plaintiff's statement to him and indicated that he acknowledged the message by pointing his lantern at plaintiff. He denies giving a "come ahead" signal. At this time, the flagman was walking down the passing track on the north side of the main line out of sight of the engineer.

In any event, the engine with boxcar in front moved east down the main line. The protruding door handle of the boxcar struck plaintiff from behind causing his injuries.

Plaintiff filed this action in the district court of Cascade County on February 21, 1973, under the Federal Employers' Liability Act and the Federal Safety Applicance Act claiming

damages of $736,000. Defendant's answer denied any negligence on the part of the railroad and pleaded the partial affirmative defense of contributory negligence. Extensive pretrial discovery was pursued by both parties consisting principally of interrogatories and answers, demands for production of documents, requests for admissions and responses, and numerous depositions.

Plaintiff moved for a partial summary judgment on the issue of liability. The district court granted plaintiff a partial summary judgment on the issue of liability under the Federal Employers' Liability Act. The district court deemed it unnecessary to rule on plaintiff's claim of violation of the Federal Safety Appliance Act.

In its order, the district court specifically stated there were no genuine issues of material fact, that defendant's negligence was established as a matter of law, and that the record disclosed no negligence on the part of plaintiff which in any way contributed to his injuries. The order specified that the uncontroverted facts established defendant's violation of its own rules requiring the boxcar door to be closed before the switching operation was ever commenced in which event the handle would not have protruded outward in the manner it did and plaintiff would not have been struck and injured.

Defendant then applied to this Court for supervisory control, seeking review and reversal of the district court's order. This Court accepted jurisdiction and issued an alternative writ ordering the district court (1) to enter "an order denying partial summary judgment", or (2) to appear and show cause "why said motion for partial summary judgment should not be denied."

After oral argument, written briefs, and hearing, we denied defendant's application in this operative language:

> "IT IS ORDERED that the relief sought be, and it hereby is, denied, and this proceeding is ordered dismissed, and our stay order is revoked."

Thereafter a jury trial was held in the district court limited to the issue of damages sustained by plaintiff. Prior to and during trial, defendant sought to reopen the issue of liability which it supported by offers of proof, all of which were denied. The jury returned a verdict for plaintiff in the amount of $525,000 and judgment was entered thereon. The district court denied defendant's motion for a new trial. Defendant appeals from the judgment.

Defendant assigns 21 issues for review. The claimed errors can be summarized:/denial of defendant's motion for a new trial; (2) awarding plaintiff a partial summary judgment on the issue of liability and limiting the jury trial to the amount of damages sustained by plaintiff; (3) admission of inadmissible evidence; (4) an excessive verdict based on passion and prejudice; (5) error in jury instructions; (6) prejudicial conduct by plaintiff's counsel and the presiding judge; (7) improper rebuttal testimony; and (8) denying defendant a pretrial examination of plaintiff for rehabilitation purposes. The principal errors claimed are the first four.

We find that we must grant defendant a new trial on the basis of errors in law that occurred prior to and at the trial. These errors of law consisted principally of the exclusion of evidence relating to defendant's partial affirmative defense of contributory negligence.

At the outset, we hold the district court's order granting partial summary judgment was correct to the extent of its ruling that the negligence of defendant was established as a matter of law on the record before it.

Defendant disputes this holding. It argues the record discloses many genuine issues of material fact, principally just what did happen in the railroad yard at Omak at the time of the accident and specifically whether plaintiff was struck by the

boxcar itself or the protruding door handle. Defendant contends the position of plaintiff after the accident, in relation to the boxcar, is as equally consistent with his being struck by the boxcar itself as by the protruding door handle. Therefore, defendant argues, the district court had to weigh the evidence, draw inferences therefrom, and assume the role of trier of the facts in order to conclude that plaintiff was struck by the protruding door handle and defendant's negligence was thereby established.

The record before the district court belies this contention. The following uncontroverted evidence was before the district court: (1) plaintiff's deposition testimony that he was hit by the protruding door handle; (2) the accident report phoned to the railroad's Wenatchee office within a half hour after the accident and subsequently reduced to writing, states that plaintiff was struck by the protruding door handle; and (3) the railroad's own operating rules require all doors to be closed before moving the boxcar. No factual inferences were required to establish that plaintiff was hit by the protruding door handle in violation of defendant's own operating rules. Defendant's contention that the facts of the accident are equally consistent with plaintiff's being struck by the boxcar itself rests on supposition and conjecture not contained in the evidence before the court.

However, the record before the district court at the time it granted partial summary judgment disclosed several genuine issues of material fact relating to defendant's claim of contributory negligence by plaintiff. Without attempting to set forth an exhaustive or all-inclusive list of such issues, we note these: (a) Should plaintiff in the exercise of ordinary care have seen the protruding door handle and corrected it prior to the accident? (b) Should plaintiff in the exercise of ordinary care have seen that the front trucks or wheels of the boxcar were on the switch points requiring the engine and boxcar to be backed

up, so the switch could be thrown directing the boxcar onto the passing track? (c) Did plaintiff himself initiate the "come ahead" signal to the engineer or was he simply relaying such signal from the flagman? (d) Was plaintiff himself guilty of violation of the railroad's operating rules? (e) Did plaintiff himself conform to reasonable standards of conduct under the circumstances?

The existence of these genuine issues of material fact in the record before the district court precluded a finding or recital by the district court that "the record discloses no negligence on the part of the plaintiff which in any way contributed to his injuries". In this respect the district court's order was in error.

In Federal Employers' Liability Act cases contributory negligence on the part of plaintiff does not bar his claim, but simply reduces his recovery in proportion to his own contributing fault. The controlling statute provides that in all actions to recover damages under the Federal Employers' Liability Act "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *." 45 U.S.C.A. §53.

In the instant case, defendant was denied the right to introduce evidence on the issue of plaintiff's alleged contributory negligence in diminution of damages. We acknowledge error in our order dismissing defendant's application for supervisory control in failing to strike the summary finding or recital in the district court's order that the record disclosed no negligence on the part of plaintiff contributing to his injuries. Perhaps this misled the district court in its subsequent rulings. In any event, the fact remains that defendant should have been permitted to introduce evidence relating to plaintiff's alleged contributory

negligence in reduction of damages. The prejudicial and reversible nature of the error is obvious.

On this basis, the judgment herein is vacated and set aside. A new trial is granted limited to the amount of damages that should be awarded plaintiff. At such trial defendant shall be permitted to introduce relevant, competent, and admissible evidence in support of its partial affirmative defense of contributory negligence.

This ruling renders consideration of most of the other issues on appeal unnecessary. They simply involve various alleged errors that occurred at the trial assigned as additional and independent grounds for granting a new trial.

The only remaining issue likely to recur on retrial is whether defendant should be permitted to have a pretrial examination of plaintiff for rehabilitation purposes. It is clear the district court's order denying such examination was based, in part at least, on these considerations: (1) the repeated delay of defendant in advising the court of the purposes of the examination, the nature of the tests to be administered, who would perform the tests, where and when they would be conducted, and similar relevant information, (2) the conflicting representations to the court as to whether psychological testing would be involved, (3) the repeated continuances in hearing defendant's motion occasioned thereby, and (4) defendant's motion as presented was not in such form or with such particularity that plaintiff could make proper objections or concurrences.

We agree with the previous ruling of the district court based on the foregoing considerations. The broad question of whether defendant is entitled to pretrial discovery of plaintiff's vocational rehabilitation potential by means of aptitude or psychological testing is not fairly presented by the record before us. Only if and when a timely, sufficient and proper motion

is presented to the district court will such issue be reached. We decline to rule on this broad question in a factual vacuum.

The judgment of the district court is vacated and set aside. A new trial is ordered on the issue of the amount of damages to be awarded plaintiff, for the reasons and under the guidelines set forth herein.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

Mr. Justice Gene B. Daly dissenting:

I dissent.

A very serious and therefore the principal problem presented by the majority opinion is the readjudication of a final order of this Court based on the contention that that order was in part in error. If it were conceded the order resulting from the show cause hearing was totally in error, that would not be grounds for a second review on appeal of a trial on damages. This strikes at the very foundation of our judicial system. As alluded to in the majority opinion, the district court granted a partial summary judgment on the issue of liability and contributory negligence in this cause and at that time defendant had the option to (1) go to trial under the district court order and try the cause on damages, as the summary judgment was not appealable, and handle the issue in the regular course of appeal, or (2) ask this Court to exercise its jurisdiction and hear the matter at that time on a petition for supervisory control. Defendant chose the latter course. Supreme Court Case No. 12660, the application for relief, petitioned:

> "That the Order granting summary judgment is not an appealable order, and unless the District Court is ordered and directed by a proper writ or order of this Court, the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, and the Honorable Paul G. Hatfield, District Judge thereof, Respondents herein, will proceed to try the damage issues in the case of 'Donald R. McGee, Plaintiff, vs. Burlington Northern, Inc., Defendant' being Civil Action No. 75920C in said District Court; and that an appeal from a final judgment in that action would impose undue hardship on Relator and be wholly inadequate as a remedy for the reason that Relator would be forced to go to trial on the damage issues with its liability already established in an Federal Employers' Liability Act case which applies a rule of comparative negligence in connection with the affirmative defense of contributory negligence, and for that reason the remedy afforded by appeal would not be adequate in a case such as this where the comparative negligence theory is the applicable rule of law." (Emphasis supplied.)

Petitioner prayed for an appropriate writ directed to respondent district court to withdraw its order dated November 30, 1973, granting partial summary judgment and that an order be entered denying plaintiff's motion for partial summary judgment in its entirety or in the alternative to appear and show cause why it has not done so. Further, that upon a <u>hearing</u> this Court <u>find and adjudicate</u> that the motion for summary judgment <u>should not have been granted.</u>

On December 17, 1973, this Court assumed jurisdiction in the matter and directed this order to the district court:

> "The Court is in receipt of an Application for Writ of Supervisory Control or other appropriate writ to inquire into an Order entered in Civil No. 75920C, in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, which said Order granted a partial summary judgment against Relator; counsel for Petitioner and Relator was heard ex parte and the matter taken under advisement.

> "IT IS ORDERED that Respondents shall withdraw the order of November 30, 1973, granting partial summary judgment and shall enter on Order denying partial summary judgment in the case of 'Donald R. McGee, Plaintiff, -vs- Burlington Northern Inc., a corporation, Defendant', being No. 75920C, in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, or, <u>alternatively, to be and appear before this Court at the hour of 9:30 A.M., on the 16 day of January, 1974, to show cause why said motion for partial summary judgment should not be denied.</u> * * *" (Emphasis supplied).

Thereafter briefs were filed by defendant and plaintiff in the district court action. The briefs were exhaustive on the issues presented to the district court in support of and in opposition to plaintiff's motion for partial summary judgment. All the depositions of all the witnesses had been taken and were referred to in the briefs. All of the discovery proceedings had been completed and were referred to in the briefs.

Plaintiff McGee's brief in Cause No. 12660, stated at the outset:

"The District Court granted plaintiff's motion for partial summary judgment leaving only the amount of damages to be determined by the jury. Defendant applied to this Court for an appropriate writ which was granted and this matter is set for hearing before this Court at 9:30 a.m. on the 16th day of January, 1974.

"In its Application for Writ and Memorandum of Authorities defendant spent some time justifying this procedure. Let it be clearly understood that counsel for plaintiff completely approve of the procedure followed by the defendant and desire to thank and commend this Court for liberally applying Writs of Supervisory Control as there is no question but that this saves litigants and their attorneys a great deal of time, money and uncertainty. * * *"

A full hearing on all issues was had by the Court on January 16, 1974 and the matter taken under advisement. After a complete examination of the record this Court found no quarrel with the partial summary judgment entered by the trial court and so stated in its order dated January 21, 1974, which in effect permitted the trial to proceed on damages and terminated the issue of liability and contributory negligence:

"O R D E R

"PER CURIAM:

"This is an original proceeding wherein Relator sought an appropriate writ to reverse an order granting a partial summary judgment entered in Civil No. 75920C, in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, in an action entitled Donald R. McGee, Plaintiff, vs. Burlington Northern Inc., a corporation, Defendant, pending in said Court.

"Counsel for Relator was heard ex parte, an order to show cause issued, all proceedings stayed in the District Court until further order.

"Upon the return day oral argument was had and briefs filed and the matter was taken under advisement.

"The Court having now considered the pleadings, briefs, and argument, and being advised,

"IT IS ORDERED that the relief sought be, and it hereby is, denied, and this proceeding is ordered dismissed, and our stay order is revoked." (Emphasis supplied).

Here, defendant argues that this Court's January 21, 1974, order, as a result of the procedures just related, could only mean that we felt defendant had an adequate remedy at law and it would

not be _proper_ to issue a writ of supervisory control and based its contention on the fact that we did not state the grounds for the decision in the order. For authority defendant miscited Schultz v. Adams, 161 Mont. 463, 507 P.2d 530. _Schultz_ was an attempt to _appeal_ a district court order for partial summary judgment and the Chief Justice clearly stated that the controlling issue in _Schultz_ was whether the order was an appealable order. There the contention was that the order was final and appealable at the district court level. All the language about "interlocutory order" and review on appeal is correct under those facts, but if a litigant feels as strongly as the defendant did here about the effect of the order and pursuades this Court to review that order under supervisory control and this is done, the order of this Court, particularly if it affirmed the district court, is a final order and not subject to review again.

Considering the process as a whole, for a minute or two, it becomes apparent on its face and to adopt the rationale of the defendant would be self-defeating. It is true we frequently do not take jurisdiction, but in those cases the Court orders an "advisory hearing" and after hearing refuse jurisdiction and dismiss thus leaving the parties where we found them. On the few occasions that this Court has taken jurisdiction and issued an order to show cause and after hearing did not wish to grant relief, as argued by defendant, we plainly stated the writ was improvidently issued and we did not wish to intervene. The fact still remains that we did order the district court order set aside here, when we issued the writ and gave the district court the alternate choice to come in and justify its order.

Had the district court not selected to appear, the order of this Court would have been binding and the summary judgment of the district court withdrawn. The district court did come in and justify its order and we made an order denying the relief to

- 13 -

petitioner-defendant and permitted the district court order to stand, and the court to proceed to trial on the issue of damages. There is no support in the law for a second review after an adjudication on the merits by a court of last resort, in the same jurisdiction.

Therefore, if the majority opinion is allowed to stand as precedent for the proposition that a second review is allowable under these facts, then the bench and the bar would be better served if these kind of proceedings were abandoned. We have no right to review a matter on the merits, dismiss the order against the trial court, permit defendant to proceed, and lead it into error and a new trial by a second review which states we are now convinced we were in error the first time around.

This obviously imposes the same burden on the parties that they both agreed they wished to avoid by a hearing on the merits, under our power of supervisory control at a time before trial. The temporary beneficiary of this kind of precendent is not going to gain in the long view of the matter, as one day the rule surely will be applied against it.

So far as the merits of the argument on contributory negligence are concerned, I am sure we were correct in our first decision. Defendant raised a number of disputed facts from which, it argued, an inference could be drawn that plaintiff stepped in front of the train and was struck by the freight car. The court has disagreed with this and established the railroad was negligent and operating in violation of its own rules. Now, the majority contends this is a genuine issue of fact on reasonable conduct or care by not seeing the protruding door handle.

First, there is no discussion in any part of the record that would indicate plaintiff had any duty to inspect and the contrary is true. All witnesses deposed placed the duty on various employees who were not employed at that yard. Also,

- 14 -

everyone deposed failed to see the protruding hook.  Vernon B.
Workman passed the door in daylight and failed to see it.  Whe
he assisted plaintiff in the dark after the accident he did not
see it and bumped his head on the hook.  The engineer was coupled
on the car and did not see it while looking directly past it.
No one even inferred in the record that plaintiff should have
seen the hook.   In fact, Paluch v. Erie Lackawanna Railroad
Company, 387 F.2d 996,999 (1968), states:

> "* * * it is not contributory negligence to
> fail to discover a danger when there is no
> reason to apprehend one."

See also:  Colorado and Southern Railway Co. v. Lombardi, 156
Colo. 488, 400 P.2d 428 (1965).

Second, all the conversation about the car on the switch
point and the dispute with the flagman and the come ahead signal
are frivolous.  Plaintiff gave the signal and was alongside the
train "in the clear" and but for the defendant's negligent open
door would not have been struck.  There is no evidence that those
switching matters contributed to plaintiff's injury.  Since
1939, the plea of contributory negligence is not a defense but
a plea to diminish damages.  The burden of proof of contributory
negligence is on the defendant and includes proof of negligent
acts or omissions and causal effect of the act or omission on
accident and injury. Page v. St. Louis Southwestern Railway
Company, 312 F.2d 84, 98 ALR2d 639, (1963).

Further, this rule is not a mere matter of procedure but
of substantive law and applies in state courts where the rule
is different.  Crugley v. Grand Trunk Ry. Co., 79 N.H. 276, 108
A. 293.  Contributory negligence of the employee which remotely,
but not directly and proximately contributes to the injury, that
is negligence that is not causal, does not operate to reduce
damages.  Illinois Cent R.Co. v. Porter, 207 F.311.

- 15 -

Third, the violation of operating rules by the plaintiff is not well taken. Defendant claimed violation of Rule #712-- a general operating rule of the railroad and which applies to all personnel to the effect that _if they see_ a hot box, dragging brake, etc., they must report or stop the train---. First, there is no duty here unless _you see_ a defect and, second, the federal courts have held these general rules to be advisory and not grounds for contributory negligence. A rule to meet the standard of contributory negligence must be directory, that is a rule applicable to plaintiff directly which would create a duty. In the entire record there is no evidence of such a violation. So far as violation of rule "M" for employees, it is another general operating rule, as well, and only provides employees must keep a lookout for movement of trains at any time, and again this has been covered above. There was no evidence to create the issue and plaintiff was in the "clear" and not struck by the train itself.

The last issue raised was reasonable conduct of the plaintiff. Again, there is no evidence in the record that would bear on this issue. If it is urged by defendant under the cases cited, defendant must set forth the conduct and its causal connection to the accident and injury. This has never appeared in the record.

For the above reasons the judgment of the district court should be affirmed.

Justice.

-16 -

Mr. Justice John Conway Harrison dissenting:

I concur in the foregoing dissent of Mr. Justice Gene B. Daly.

-----------------------------
Justice.