Freddie L. JOHNSON and Clara Johnson, husband and wife, Plaintiff,

v.

UNITED STATES of America, Defendant and Third Party Plaintiff,

v.

Timothy B. HAY, Third Party Defendant.

No. CV–77–20–GF.

United States District Court,
D. Montana,
Great Falls Division.

Aug. 1, 1980.

Tom L. Lewis, James M. Regnier, Regnier & Lewis, Ralph T. Randono, Randono & Donovan, Great Falls, Mont., for plaintiffs.

Robert T. O'Leary, U. S. Atty., George Darragh, Asst. U. S. Atty., Butte, Mont., for defendant and third party plaintiff.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

HATFIELD, District Judge.

This action was tried to the court sitting without a jury. Trial commenced on December 11, 1979 and concluded on December

17, 1979. Each of the parties introduced oral and documentary evidence. At the close of the evidence the parties rested, and the cause as to liability only of defendant United States was submitted to the court. The parties thereafter filed briefs on all issues. The court enters the following findings of fact and conclusions of law, pursuant to Rule 52(a) F.R.Civ.P., on the issue of the liability of defendant United States.

## FINDINGS OF FACT

1. Plaintiffs Freddie Johnson and Clara Johnson, husband and wife, seek damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for injuries sustained by plaintiff Freddie Johnson on December 13, 1975, when an automobile owned and being driven by Timothy Hay, in which plaintiff Freddie L. Johnson was riding as a guest passenger, left the road on Second Avenue North in Great Falls, Montana, approximately one mile from Malmstrom Air Force Base, Montana.

2. As a result of the automobile accident, plaintiff Freddie L. Johnson suffered a severe injury to his neck which has left him a quadraplegic and totally permanently disabled.

3. On December 12–13, 1975, plaintiff Freddie L. Johnson, Timothy B. Hay, and William R. Provencher, Jr., were all members of the United States Air Force, assigned to Malmstrom Air Force Base, Cascade County, Montana.

4. On December 12, 1975, Johnson, Hay and Provencher worked their usual eight hour military duty assignments until late that afternoon. All three men were also employed on a part-time basis at the Noncommissioned Officers Club (hereinafter "NCO Club") at Malmstrom Air Force Base.

5. On December 12, 1975, Johnson and Hay went to work as part-time bartenders at the NCO Club at approximately 6 p. m. and continued to work in that capacity until shortly before 2 a. m. on December 13, 1975.

6. William R. Provencher came on duty as night manager at the NCO Club at approximately 9 o'clock p. m. on December 12,

1975, and remained on duty until approximately 4:30 or 4:45 a. m. on December 13, 1975. During this period of time, Provencher, as the NCO Club manager, was responsible to insure that all state laws and all applicable Air Force directives, regulations, operating instructions, policies and procedures were followed.

7. Closing time at the NCO Club on the night in question was 2 o'clock a. m., which was established by both operating instructions of the NCO Club and Montana state law.

8. While on duty and sometime before the NCO Club closed, Provencher, Hay, Johnson and other Club employees pooled their tips and sent one employee out to purchase liquor to be consumed at an after-hours party at the NCO Club.

9. Prior to the 2 a. m. closing time, Johnson and Hay clocked out as employees of the Club and, because they were members of the Club as Air Force noncommissioned officers, became customers of the Club. It was Provencher's responsibility, as NCO Club night manager, to see that all customers left the Club premises at 2 a. m., because off-duty employees are treated as all other customers in the Club.

10. An after-hours party was held by 15–20 off-duty employees on the NCO Club premises at Malmstrom Air Force Base on December 13, 1975 with the full knowledge and permission of William Provencher. Intoxicating beverages were served at the after-hours party.

11. The liquor consumed at the after-hours party on the NCO Club premises was not purchased from the Club. The off-duty employees did use the Club's paper cups, mix and ice. Liquor was consumed freely by the off-duty employees until the party broke up around 4:30 a. m.

12. On December 12 and 13, 1975 there was in full force and effect an operating instruction (OI) duly adopted by NCO Club management, which provided that William R. Provencher, as the night manager on duty, was responsible for and spoke for Club management. The operating instruc-

tion required the night manager "to supervise the functional operation of the Club activity" and "be knowledgeable of, and enforce all Club OIs and Policy Letters".

13. There was in full force and effect on December 12 and 13, 1975 the following operating instruction:

b. On Friday and Saturday and days preceding a holiday, last call will be given at 0145 hours and entertainers notified to close down. Under NO circumstances will Bars be open after 0200 hours or entertainers permitted to continue to play after that time. After Bars have closed and entertainers have departed, patrons will NOT be permitted to remain in the Club beyond a short reasonable time to finish drinks served prior to closing. The juke box will NOT be played after 0200 hours. All patrons should be clear of the Club by 0230 hours.

14. There was in full force and effect on December 12 and 13, 1975 Air Force Regulation 215–1, Volume 11, dated September 23, 1974, which provides as follows:

e. The "Dram Shop" theory is a legal theory of liability, created either by statute or court decision, which imposes upon the owner/operator of an establishment serving alcoholic beverages the duty to refuse to serve additional alcoholic beverages to a customer who reaches or appears to be reaching the point of intoxication. . . . Open messes are NAFIs of the United States Government. As such, they should establish procedural safeguards to prevent over-indulgence by their patrons. The following guidance is provided to protect the assets and interests of the open mess against liability claims that could result from the support of this theory:

(1) Bylaws of the open mess will include a rule prohibiting the serving of alcoholic beverages to any member, dependent, or guest that appears to be intoxicated and not in complete control of his/her faculties.

15. William R. Provencher was reprimanded by the senior officer at Malmstrom Air Force Base for failing to comply with the operating instructions and regulations which prohibited off-duty employees from staying in the Club after closing time.

16. At the after-hours party held on the NCO Club premises, Timothy Hay consumed an excessive amount of liquor and became intoxicated. Hay had consumed two or three drinks while on duty as a party bartender. Hay went to the main bar after he got off duty as a bartender and purchased two or three more drinks from the head bartender prior to the 2 a. m. closing time. Hay admits to "feeling pretty good" at the time he punched out and went off duty. Hay testified to having four or five doubles during the after-hours party and also admits that he could have had more than five doubles at the after-hours party.

17. The Air Force personnel in charge of the NCO Club at the time of the after-hours party, William Provencher, knew or should have known that Hay was drinking to excess, but permitted him to remain on the Club premises after 2 a. m. and permitted him to continue to consume intoxicants on the premises after 2 a. m. on December 13, 1975.

18. Provencher knew that he was violating Montana law and military regulations and operating instructions regarding closing time for commercial retail liquor establishments, when he permitted the after-hours party on the NCO Club premises.

19. The NCO Club had remained open for parties involving the consumption of intoxicating beverages on numerous occasions prior to December 12 and 13, 1975 at the request of high ranking military officers and for other after-hours off-duty parties. The after-hours party in question was not an isolated incident, but rather an event of a kind that occurred several times at the NCO Club in violation of express written Club rules.

20. Hay and Johnson left the after-hours party at the NCO Club at approximately 4:30 a. m. on December 13, 1975. At the time they departed the Club, Johnson

had no automobile with which to travel to his home. Hay volunteered to give Johnson a ride home in Hay's automobile.

21. At the time Hay and Johnson left the NCO Club it was very cold and not an ideal night for a person to be walking along the road several miles to go home.

22. Plaintiff Freddie Johnson believed Sergeant Hay to have been intoxicated and an unsafe driver when the two left the NCO Club.

23. Sergeant Provencher had not closed the NCO Club at the time Freddie Johnson and Sergeant Hay left, and thus represented a possible alternative ride home for Freddie Johnson.

24. Shortly after Hay and Johnson left the NCO Club, at a point less than one mile from the front gates of the Malmstrom Air Force Base, Hay lost control of his vehicle, spun the vehicle several times, went off the roadway, and collided with a tree, causing the serious injuries to the plaintiff.

25. The most credible evidence was that the cause of the accident was that Hay was under the influence of alcohol at the time of the accident. Hay's judgment and reaction capabilities were hampered due to the alcoholic content in his blood at the time he left the roadway.

26. At the time Hay and Johnson left the NCO Club, they were both groggy or fatigued. Johnson had been up for 22 hours consecutively by the time he left the Club. Hay had been awake and without sleep continuously since 6 a. m. on December 12th, 22½ consecutive hours prior to the time he left the NCO Club.

27. Sergeant Hay was intoxicated at the time of the accident. Two hours after the accident Hay submitted to a blood sample to determine the presence or absence of alcohol in his blood. This sample then underwent laboratory analysis and the parties stipulated that the results of this analysis were that Hay had 0.12 percent alcohol by weight/volume in his blood at the time the blood was drawn two hours after the accident.

28. On June 15, 1976, plaintiff Freddie Johnson filed with the United States Air Force a claim for injury resulting from the automobile accident. Freddie Johnson's name was entered as the claimant. Clara Johnson's name appeared on the claim form only in the section of the standardized form provided for the name and address of the claimant's spouse.

29. Plaintiff Clara Johnson did not sign plaintiff Freddie Johnson's claim form as a joint claimant.

30. Plaintiff Clara Johnson did not file a separate administrative claim with the United States Air Force for injuries suffered as a result of her husband's accident, or in any manner prior to filing this lawsuit give the United States notice that she would assert a claim for loss of consortium.

## CONCLUSIONS OF LAW

1. For this court to have jurisdiction over a plaintiff's Federal Tort Claims Act ("FTCA") claim, the plaintiff must previously have filed the claim with the appropriate federal agency and such claim must have been finally denied by the agency. 28 U.S.C. § 2675(a).

2. Plaintiff Freddie Johnson has complied with the FTCA administrative remedy exhaustion requirement, giving this court jurisdiction of his FTCA claim under 28 U.S.C. § 1346(b).

3. Under Montana law, a husband or wife may bring an action for loss of consortium, which is a derivative claim, separate and distinct from the spouse's claim for injuries. *See, Dutton v. Hightower and Lubrecht Construction Co.*, 214 F.Supp. 298 (D.Mont.1963); *Duffy v. Lipsman-Fulkerson & Co.*, 200 F.Supp. 71 (D.Mont.1961).

4. To preserve her right to bring a derivative but separate FTCA action in this court for loss of consortium, plaintiff's wife, Clara Johnson, was required either to join in plaintiff's claim or to file a separate claim. *Knouff v. United States*, 74 F.R.D. 555 (W.D.Pa.1977).

5. Plaintiff's merely listing Clara Johnson as his wife on his own administrative claim form was not sufficient either to give the United States notice that she would file a separate claim for loss of consortium or to satisfy the FTCA administrative claim filing prerequisite. *Heaton v. United States,* 383 F.Supp. 589 (S.D.N.Y. 1974); *Ryan v. United States,* 457 F.Supp. 400 (W.D.Pa.1978).

6. Because plaintiff Clara Johnson failed to file an administrative claim as required by 28 U.S.C. § 2675(a) and 28 C.F.R. 14.1 *et seq.,* she did not satisfy the prerequisite to filing suit in this court against the United States under the FTCA. Clara Johnson's claim therefore must be dismissed, as the court lacks jurisdiction of the subject matter of her action. *Blain v. United States,* 552 F.2d 289, 291 (9th Cir. 1977) (per curiam).

7. Montana law is controlling in this FTCA action for personal injuries sustained in Montana. 28 U.S.C. § 2674; *Mundt v. United States,* 611 F.2d 1257, 1259 (9th Cir. 1980).

8. On December 12 and 13, 1975, the predecessor statute to M.C.A. § 16–3–301 (R.C.M.1947, § 4–3–306), was in full force and effect. The statute provided, in pertinent part, as follows:

4–3–306. *Persons to whom alcoholic beverage may not be sold or given.* (1) No licensee or his or her employee or employees, nor any other person, shall sell, deliver, or give away or cause or *permit to be sold, delivered or given away any alcoholic beverage* to:

(a) Any person under the age of eighteen (18) years.

(b) *Any intoxicated person or any person actually, apparently, or obviously intoxicated.* (Emphasis Supplied)

9. The United States of America violated R.C.M.1947, § 4–3–306 (now codified as M.C.A., § 16–3–301) by permitting to be "delivered or given away" alcoholic beverage to Timothy Hay who became an intoxicated person and became under the influence of alcohol while on the NCO Club

premises at the after-hours party in question.

10. The Montana Alcoholic Beverage Code, R.C.M.1947, § 4–1–101 *et seq.* (now codified as M.C.A. § 16–1–101, *et seq.*), provided that the Code was "an exercise of the police power of the state, in, and for the protection, of the welfare, health, peace, morals and safety of the people of the state and their provisions shall be construed for the accomplishment of such purposes." R.C.M.1947, § 4–1–101.

11. The predecessor statute to M.C.A. § 16–3–304 (R.C.M.1947, § 4–3–304) was in full force and effect on December 12 and 13, 1975. The statute read, in pertinent part, as follows:

4–3–304. *Closing Hours for Licensed Retail Establishments.* Hereafter all licensed establishments wherein alcoholic beverages are sold, offered for sale or given away at retail shall be closed . . (a) on any day between two a. m. and eight a. m.; . . . During such hours all persons except the owner and employees of such licensed establishments shall be excluded therefrom except as provided in section 4–3–305.

12. The predecessor statute to M.C.A. § 16–3–305 (R.C.M.1947, § 4–3–305) was in full force and effect on December 12 and 13, 1975, and provided in pertinent part as follows:

4–3–305. *Sale of Alcoholic Beverages During Closing Hours Forbidden—Lawful Business Need Not Be Closed.* During the hours when the said licensed establishments where alcoholic beverages are sold at retail are required by this code to be closed, *it shall be unlawful to sell, offer for sale or give away any such alcoholic beverages, and during such hours all persons save employees of such licensed establishments shall be excluded therefrom* . . . . (Emphasis Supplied)

13. The defendant violated R.C.M.1947, §§ 4–3–304 and 4–3–305 by permitting off-duty employees, including Timothy Hay, to remain on the NCO Club premises as customers or patrons from 2 a. m. until approx-

imately 4:30 a. m. on December 13, 1975. During this time Timothy Hay consumed considerable alcohol on the premises, using glasses, ice and mix provided by the Club, all of which was done in the presence and with the approval of the night manager, William Provencher. R.C.M.1947, § 4–3–305 specifically provided that all persons, save employees (Hay, Johnson and other off-duty employees were not acting as employees during the after-hours party, but rather were patrons or customers), shall be excluded from licensed retail liquor establishments such as the NCO Club.

14. The violations of the foregoing statutes enacted for the protection, health, welfare and safety of the people of Montana is negligence *per se*. *Deeds v. United States*, 306 F.Supp. 348 (D.C.Mont.1969); *Williams v. Maley*, 150 Mont. 261, 267, 434 P.2d 398 (1967).

15. The violations of Air Force regulations, rules and operating instructions contained in the Findings of Fact is evidence of negligence on the part of the defendant. *See, McGee v. Burlington Northern, Inc.*, 167 Mont. 485, 540 P.2d 298, 301 (1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976); *Denver v. De-Long*, 190 Colo. 219, 545 P.2d 154, 155–156, 82 A.L.R.3d 1278 (1976), and cases cited therein.

16. This case is within the rule of *Deeds v. United States, supra*, in that it arises out of the same legal relationship that was involved in *Deeds*. Like *Deeds* this case involves numerous violations of Montana statutes and Air Force rules and regulations, all of which were designed to promote public health, welfare and safety. While this case does not involve the sale of intoxicants to a minor, it does involve an additional violation of Montana statute not present in the *Deeds* case, namely the defendant's failure to comply with Montana law concerning the closing time for retail establishments. R.C.M.1947, §§ 4–3–304 and 4–3–305. Defendant's conduct was particularly egregious considering that the after-hours party involved in this case was simply the latest in a series of illegal after-hours parties at the NCO Club. Under these circumstances, this case is sufficiently aggravated to bring it within the rule of *Deeds, supra*. This court agrees with the rationale of Judge Jameson in reaching this conclusion.

The increasing frequency of serious accidents caused by drivers who are intoxicated is a fact which must be well known to those who sell and dispense liquor. This lends support to those cases which have found the automobile accident to be 'the reasonably foreseeable' result of the furnishing to the intoxicated driver, at least where the person furnishing would be driving on a public highway.

*Deeds, supra*, 306 F.Supp. at 358.

17. Several causes may contribute to produce an injury. The test of whether or not a cause is a proximate cause of an injury is found in the character and the natural connection between the wrong done and the injurious consequence. If the result attributable to the original negligence might reasonably have been foreseen as probable, liability attackes. *Deeds, supra; Mize v. Rocky Mountain Bell Telephone Co.*, 38 Mont. 521, 532, 100 P. 971 (1909). The negligence of Air Force personnel in violating the statutes and government rules with respect to permitting alcohol to be delivered or given away to an intoxicated person after the legal closing time for a retail liquor establishment was in this case a proximate rather than a remote cause of the plaintiff's injury.

18. The predecessor statute to M.C.A. § 61–8–401 (R.C.M.1947, § 32–2142), was in full force and effect on December 12 and 13, 1975. The statute provided in pertinent part that if there is, at the time a person is operating a motor vehicle, 0.10% or more by weight of alcohol in the driver's blood, it shall be presumed that the driver was under the influence of alcohol.

19. Timothy Hay was negligent in driving his car while under the influence of alcohol. Timothy Hay's intoxication was a proximate rather than a remote cause of the automobile accident in which plaintiff Freddie Johnson was severely injured.

20. The negligence of Timothy Hay in losing control of his motor vehicle and operating his motor vehicle while under the influence of alcohol, was not a superseding, intervening cause of the injury to the plaintiff. Hay's conduct was a foreseeable intervening cause and therefore does not cut off liability to the plaintiffs. *Deeds, supra*; §§ 442, 443, 444 and 435, Restatement of Torts, 2d.

21. Defendant pleaded the affirmative defense of assumption of risk. Under Montana law, assumption of risk is to be treated like any other form of contributory negligence and apportioned under the Montana Comparative Negligence Statute. *Kopsihke v. First Continental Corp.*, Mont., 610 P.2d 668, 37 St.Rptr. 437, 462 (1980).

22. Plaintiff Freddie Johnson did assume the risk of injuries when he agreed to ride in the automobile with Sergeant Hay, a man he felt to be intoxicated and an unsafe driver.

23. Plaintiff Freddie Johnson's assumption of risk was a 25% causative factor of his damages, defendant's negligence was a 35% causative factor of plaintiff's damages; Sergeant Timothy Hay's negligence was a 40% causative factor of plaintiff's damages. Damages cannot be apportioned against Sergeant Hay, however, since he is not a defendant in this action and has been dismissed with prejudice as a third-party defendant upon the motion of defendant and third-party plaintiff United States.

24. Any damages allowed plaintiff Freddie Johnson against defendant United States in a subsequent trial on the bifurcated issue of damages shall be diminished by 25%, the amount of negligence attributable to plaintiff. M.C.A., § 27–1–702.