Robert ROUSH, Plaintiff-Appellant,

v.

UNITED STATES of America, Command Club Management Systems, Enlisted Men's Club, Defendant-Appellees.

No. 83–6282.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 5, 1984.

Decided Feb. 6, 1985.

Edmund J. Bradley, Lichtman, Bradley & Mayuga, Santa Ana, Cal., for plaintiff-appellant.

Stephen O'Neil, U.S. Atty., Los Angeles, Cal., David W. Brennan, Brennan & Hollins, Santa Ana, Cal., for U.S.

Before TUTTLE,[1] Senior Circuit Judge, and NORRIS and BEEZER, Circuit Judges.

TUTTLE, Senior Circuit Judge:

We have here for consideration another suit by a serviceman against the United States and its agents based on the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The complaint was met in the district court by a motion by the United States to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The trial court dismissed the complaint, citing *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), stating that the "plaintiff's action is hereby dismissed for lack of jurisdiction over the subject matter."

Although the trial court did, in its opinion supporting the dismissal of the complaint, recite certain facts, it did so only by paraphrasing the allegations of the complaint, which was the only pleading before it.

## I. THE COMPLAINT

Since we must read the complaint carefully to determine whether, taking all allegations of fact as true, the plaintiff can prove any state of facts which would entitle him to relief we reproduce much of it here:

1. Plaintiff is and at all times herein mentioned was a resident of the County of Orange, State of California, and a citizen of the United States of America on active duty with the United States Marine Corps.

2. This lawsuit is brought against the UNITED STATES OF AMERICA and at all times herein mentioned is subject to the Federal Tort Claims Act Title 28 U.S.C. § 1346.

3. A claim for damages was filed and served on the UNITED STATES OF AMERICA on or about September 13, 1982. More than six (6) months has elapsed without a formal rejection of said claim.

4. Plaintiff is informed and believes and on that basis alleges that Defendant COMMAND CLUB MANAGEMENT SYSTEMS is a business entity which manages the Defendant ENLISTED MENS CLUB and is doing business on El Toro Marine Corps Base in the County of Orange, State of California, by and through said managed Defendant ENLISTED MENS CLUB which is a nonappropriated fund activity and which is not an integral part of the United States Marine Corps, but instead a social club organization that was at all times herein mentioned an instrumentality of the Defendant UNITED STATES OF AMERICA.

5. Defendant ENLISTED MENS CLUB is and at all times herein mentioned was an organization doing business in the County of Orange, State of California, open to military personnel and to non-military persons upon invitation from Marine Corps personnel.

6. Defendant COMMAND CLUB MANAGEMENT SYSTEMS is a non-appropriated fund activity which is not an integral part of the United States Marine Corps, but is a social organization which was at all times herein mentioned an instrumentality of the Defendant UNITED STATES OF AMERICA, managed by civilians. Plaintiff is informed and believes and

---

1. Honorable Elbert P. Tuttle, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

thereon alleges that each of the defendants designated herein acted negligently and are legally responsible in some manner for the events and happenings hereinafter referred to and thereby, negligently caused the injury and damage to plaintiff.

. . . . .

8.  At all times herein mentioned, defendants, and each of them, managed, owned, operated, maintained, and/or controlled a club known as the ENLISTED MENS CLUB at the United States Marine Corps Base, El Toro, Santa Ana, Orange County, State of California, engaged in selling intoxicating liquors to the United States Marine Corps personnel and their guests for consumption on the premises, such acts constituting a non-appropriated fund activity and not being an integral part of the United States Marine Corps, but being a social club. organization which was at all times herein mentioned, and is an instrumentality of the UNITED STATES OF AMERICA, separate and apart from the United States Marine Corps.

9.  At all times herein mentioned, plaintiff was an invitee and paying person of said social club whose presence in said social club was during his off duty hours while dressed in civilian clothing and not acting in any furtherance of the United States Marine Corps mission, activity, and/or business.

10. At all times herein mentioned, SCOTT P. ALIX was off duty and dressed in civilian clothing and at all times herein mentioned, acted pursuant to his civilian employment and paid as a bouncer by said Defendant ENLISTED MENS CLUB and not

acting in the furtherance of any United States Marine Corps mission, activity, and/or business, and negligently evicted said plaintiff causing the injuries and damages alleged herein.

11. On or about May 26, 1981, at approximately 4:30 P.M., on the United States Marine Corps Base known as El Toro, in the City of Santa Ana, County of Orange, State of California, plaintiff, while lawfully in said social club, was negligently evicted from said social club and injured in the parking lot of said ENLISTED MENS CLUB. Said employee, SCOTT P. ALIX, did negligently evict plaintiff by pushing plaintiff from behind and pushing plaintiff into the ground of the parking lot of said ENLISTED MENS CLUB face first.

The complaint further set out the alleged acts of negligence and the claimed damages suffered by the plaintiff.

In addition, appellant stated in his Response to Notice to Dismiss Pursuant to F.R.C.P. 12(b)(6) Memorandum of Points and Authorities, relating to the status of Alix, the bouncer. "The bouncer, Scott P. Alix, was an off-duty Marine dressed in civilian clothing, who caused plaintiff severe injury by his negligence."

## II.  THE FERES DOCTRINE

The *Feres* doctrine is a court-engrafted exception to the Federal Tort Claims Act.[2]

In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court was faced with three cases: two for medical malpractice by military doctors and one for maintenance of unsafe military barracks. The Court found that none of these claims could establish a

---

**2.** This Act provides in relevant part that the United States waived its sovereign immunity and agreed to be subject to suit

for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1982).

cause of action under the FTCA for injuries to servicemen "where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.

### III. APPLICABILITY OF FERES TO THE PETITIONER'S CASE

As might have been expected, much litigation ensued, and the United States courts arrived at somewhat differing results in construing the term "arise out of or are in the course of activity incident to [military] service." However, our task is somewhat simplified by the binding effect of our decision in *Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983). In *Johnson*, we traced the history of each type of case that had dealt with the *Feres* doctrine and concluded that:

> [T]he most persuasive justification for the *Feres* doctrine is the potential impact of civil suits on military discipline. After reviewing the *Feres* doctrine, the Supreme Court concluded that the incident to service exception is "best explained" by the disciplinary rationale. *United States v. Muniz*, 374 U.S. 150, 159–62, 88 S.Ct. 1850, 1856–57, 10 L.Ed.2d 805 (1963). As the Court has noted,
>> the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Torts Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read the act as excluding claims of that character.
>
> *United States v. Brown*, 348 U.S. [110] at 112, 75 S.Ct. [141] at 145 [99 L.Ed. 139 (1954)]. *See also Hunt v. United States*, 636 F.2d [580] at 599 [ (D.C.Cir. 1980) ] ("the protection of military discipline ... serves largely if not exclusively as the predicate for the *Feres* doctrine ... Only this factor can truly explain the *Feres* doctrine and the crucial line it draws...."); *Parker v. United States*, 611 F.2d [1007] at 1010 [ (5th Cir.1980) ];

*Veillette v. United States*, 615 F.2d 505, 506 (9th Cir.1980).

*Id.* at 1436.

Both parties cite *Johnson* to us as supporting their respective positions. Since we are bound by *Johnson* in any similar case, it is necessary to set out the facts in that litigation:

> Sergeant Freddie Johnson, a noncommissioned Air Force officer, is a quadraplegic as the result of injuries sustained in an automobile accident that occurred in the early morning hours of December 13, 1975. The automobile was owned and driven at the time of the accident by Air Force Sergeant Timothy Hay.
>
> Hay and Johnson were on active duty in December 1975 and assigned to Malmstrom Air Force Base in Montana. During their off-duty hours, they were employed as bartenders at the Noncommissioned Officers Club ("NCO Club") located on the base.
>
> After completing their normal eight hour tour of duty during the day, Hay and Johnson reported to work at approximately 6:00 p.m. on the evening of December 12, 1975. Air Force Sergeant William Provencher, Jr., night manager of the NCO Club, came on duty at approximately 9:00 p.m.
>
> During the evening, the employees— including Hay, Johnson and Provencher—agreed to pool their tips and have an after-hours party at the NCO Club. One of the employees drove to an off-base liquor store to buy liquor for the party.
>
> Under Montana law and military regulations, the NCO Club was required to close by 2:00 a.m. On December 13, 1975, Hay and Johnson clocked out shortly before 2:00 a.m., but remained at the Club. Provencher closed the NCO Club at 2:00 a.m., but did not clock out until 3:30 or 3:45 a.m. Hay remained at the Club until after all other employees had left the party. The party began shortly after 2:00 a.m. and lasted until about 4:30 a.m. Liquor consumed at the party came from the off-base store, but the employees used the Club's cups, ice and mixers.

Johnson and Hay left the NCO Club at 4:30 a.m. It was an extremely cold night. Johnson lived off-base, and Hay offered to drive him home. About one mile outside the entrance to the base Hay's car left the road and collided with a tree. Johnson sustained a severe injury to his neck that left him permanently and totally disabled.

Hay submitted to a blood alcohol test approximately two hours after the accident. Based on laboratory analysis of this test, the district court found that Hay was legally intoxicated at the time of the accident.

．　．　　　．　　　．　　　．

Johnson's case was bifurcated for trial on the issues of liability and damages. At the liability trial, 496 F.Supp. 597 (D.Mont.1980), the district court found that the negligence of Air Force personnel in violating Montana statutes and military regulations with respect to the legal closing time for a retail liquor establishment was the proximate cause of Johnson's injuries, and that the negligence of the driver Hay in operating an automobile under the influence of alcohol was a foreseeble intervening cause.

*Johnson v. United States,* 704 F.2d at 1433-44. (9th Cir.1983).

It is plain that there are some facts in *Johnson* that are similar to those in appellant's case: the negligent act occurred on the base; the negligent act occurred because of interaction of two members on active duty in the military service, although at the time not on a duty status; the negligent act occurred at a Non-Appropriated Fund Instrumentality (NSFI).

There are also some differences between the facts of the two cases: Johnson was not enjoying the facilities of the Enlisted Mens Club by virtue of his being a member of the Air Force, whereas Roush's complaint alleges that he was an active duty Marine patron at the Enlisted Mens Club, which was operated for enlisted men of the Marine Corps and their guests, clearly an allegation that he was present at the time of his injury solely by virtue of his being a

member of the Marine Corps. He alleged no facts to indicate that his presence in the Club resulted from any other circumstance such as was the fact in Johnson's case. As noted in the Court's Opinion, Johnson stood "in exactly the same position as a civilian employee" at the time of the occurrence of the negligent act. *Id.* at 1439. Contrasting Johnson's situation with that of the serviceman in *Mariano v. United States,* 605 F.2d 721 (4th Cir.1979), we also noted that "Johnson was not subject to any such direct control [as in the case of *Mariano* ] at the time the negligent act occurred." 704 F.2d at 1440.

This, then, clearly demonstrates that before a court can determine that it has no subject matter jurisdiction over a claim of a serviceman in the situation alleged to exist here, either the complaint must allege, or a trial must develop the fact that he "[w]as ... subject to ... such direct control [as in the case of *Mariano* ] at the time the negligent act occurred."

Of course, Roush does not make any such allegation here.

Had the United States cited any federal statute or regulations, having the effect of law, providing that persons in the relation of Roush and Alix were within the direct control of the military at the time the negligent act occurred, the trial court could properly have granted the motion to dismiss. This is true because we have identified a statute and regulations that establish the following facts, when considered with Roush's allegations.

Roush was, at the time of his injury, an active duty Marine enlisted man, enjoying, because of that status, the benefits of a service club (a Non-Appropriated Fund Instrumentality) operated by the Marine Corps for the morale, welfare and recreation (MWR) of the Command and that he was injured by another active duty Marine, temporarily engaged as bouncer of such club. *See* 50 U.S.C.App. § 473 and D.O.D. Regs. Armed Services Military Clubs 32 C.F.R. 261.1, pt. 261. Neither of these authorities, however, deals with the ques-

tion as to whether the operation of the Club was at the time of the accident, under the direct command of senior military personnel or that Roush and Alix were at the time subject to military discipline for any violation of the existing regulations governing such Club.

In *Mariano,* cited above, these facts were established at a trial and not taken for granted in order to dismiss the complaint under the *Feres* doctrine for lack of subject matter jurisdiction.

It thus becomes necessary for us to remand this case to the trial court, since it was error for it to dismiss the complaint without a showing, either by statute, regulations having the force of law, or by proof dealing with this critical military command relationship, in order for it to determine whether the *Feres* doctrine should apply to this case.

REVERSED and REMANDED.